**STATE ex SQUIRE v ROYAL INS CO**

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided Jan 31, 1938

H. S. Duffy, attorney general, of Columbus, Hugh McNamee, W. T. Matia, R. J. Selzer, special counsel, of Cleveland, for plaintiff-appellant.

A. B. Curtiss, of Cleveland, for defendants-appellees.

## OPINION

By LIEGHLEY, J.

On the 5th day of February, 1935, and prior thereto, the Grigsbys owned a parcel of land on Center Ridge road, with the improvements thereon. On this day a fire caused about two-thirds loss of property insured thereon. The property was then encumbered by a mortgage to The Guardian Trust Company of about Six Thousand, Seven Hundred Dollars ($6,700.00) which was unpaid and in default. Taxes and assessments then due the county of Cuyahoga and unpaid amounted to more than the market value of the property before the fire occurred.

By the terms of the mortgage contract the owner was required to furnish fire insurance with rider attached in an amount equal to the loan.This requirement was complied with and the Royal Insurance Company named defendant herein, issued such policy with rider in standard form attached, stipulating that the proceeds shall be paid to the mortgagee as its interest may appear. If this rider clause had not been made part of the contract it is safe to say the loan would not have been made.

The fire loss was adjusted at a figure of about Five Thousand, Three Hundred Dollars ($5300.00). The mortgagee demanded the proceeds and payment to it was then refused.

Some few days after the fire, Mary L. Grigsby and one Burton, who was acting for and doing business as The Steel Built Home, Inc., appeared at the office of the liquidator for the purpose of discussing the application of the proceeds of the policy of insurance. Burton later appeared again and left a proposed contract to use the proceeds to repair and restore the property. He was told that the matter would have to be submitted to the Reconstruction Finance Corporation for decision as it held the mortgage as security for a loan. It is conceded that the mortgagee did not authorize or expressly consent that the property should be restored or the money applied thereto. Burton now claims from all that transpired that there was tacit consent, which claim receives little support from the record.

It appears that Burton made preservation repairs before approaching the mortgagee and promptly thereafter proceeded to restore the property to substantially its former condition. A month or so after the fire a representative of the liquidator in passing the property saw what had been done and reported the fact to the office, whereupon a letter was written at once to the Grigsbys and the insurance company that the liquidator had not consented to the restoration of the property insured and demanded that the amount due under the policy should be applied to a reduction of the amount due on the note and mortgage.

Thereafter the liquidator, plaintiff herein, brought an action against the said insurance company, and The Steel Built Homes Inc., and the Grigsbys were made parties defendant. The insurance company paid the amount of the insurance adjusted at the amount of about $5300.00, into court and was discharged. The case came to trial below with plaintiff and The Steel Built Homes Inc., each claiming the funds, the Grigsbys having assigned their interest to The Steel Built Homes Inc. The trial resulted in a judgment in favor of The Steel Built Homes Inc. Plaintiff perfected an appeal on questions of law and fact to reverse said judgment claiming that there should have been a decree for plaintiff.

The Grigsbys having assigned their interest in the proceeds of the policy after the fire to The Steel Built Homes Inc., it will hereinafter be referred to as the defendant. By this assignment the defendant received such interest as the Grigsbys then had and no more. The

defendant stepped into the shoes of the owner.

Recapitulating, at the time of the fire the note and mortgage were overdue, unpaid and in default. The proceeds of the insurance were less than the amount owing on the mortgage. The taxes exceeded the market value of the property before the fire and therefore greater than its value after the building was restored to its former condition.

By the terms of the mortgage contract the owner through the stipulated rider clause directed the insurance company to pay the proceeds in the event of loss to the mortgagee. And the insurance company, by its policy, contracted with the mortgagee to pay to it said proceeds in such event. The relation of the insurance company and the mortgagee under the circumstances is contractual, and when the fire occurred the insurance company unconditionally under its contract and the express written direction and agreement of the owner promised to pay to the mortgagee. These funds representing the fire loss belong to the mortgagee, unless some reason may be logically assigned for ignoring the clear and express terms of the contract of the parties concerned under the admitted facts of this case.

This mortgage and policy of insurance contains the so-called 'loss payable clause' in form known as the standard form' which in addition to providing that the loss shall be payable to the mortgagee as its interest may appear also recites that no act or neglect of the owner shall invalidate the interest of the mortgagee in the proceeds. A contract to repair or restore is an act which is forbidden if intended to impair the interest of the mortgagee. A loss occurring after the mortgage is in default and the mortgage being greater than the proceeds of the policy, the mortgagee is the real party in interest entitled to the funds for which it may maintain an action, **Union Central Life v Clinton Mutual Ins Assoc, 51 Oh Ap 20, 19 Abs 677, 3 O. O., 202; Ohio Farmers Ins Co v Hull, 45 Oh Ap 166, 15 Abs 17.**

The defendant contends that this rider clause under the circumstances is nothing more than an indemnity clause. Hence the option rests with the owner at all times to say whether the insurance money shall be applied to a reduction or discharge of the mortgage or to the repair and restoration of the partially destroyed building. Since the owner in this case, through and by the agency of the defendant elected to repair and restore the funds belong to the defendant.

The plaintiff claims that under the facts of this case the option rests with the liquidator. The mortgage being in default and greater than the loss, it is for him to decide in what manner the money shall be applied. Regarding the express terms of the mortgage and policy and the facts of this case, we concur in this claim. The mortgagee may elect to apply the money on the mortgage. If the proceeds had been greater than the mortgage, the mortgagee would hold the excess for the benefit of the owner or his assignee to whom he would be obliged to account.

But it is said that this conclusion is inequitable. The mortgagee still holds the mortgage as security for the balance of the loan with all the restored improvements thereon and the claim of defendant for restoring and repairing is subordinate thereto. This is true. The fact that under the present state of the real estate market the taxes exceed the value of the property (which fact has no bearing on the legal question involved), presents a situation where plaintiff or defendant probably must suffer loss. If these funds go to defendant then the plaintiff might as well write off the mortgage as the taxes take the property. If plaintiff is awarded these funds the defendant must lose the cost of repairs or speculate by paying the taxes and holding the property.

This case is determined principally by deciding which party had the option and right to elect upon the application of the funds i.e. to whom do the funds belong and who has legal right thereto?

Without intending to give weight to this claim of inequity in view of the foregoing with whom does equity and justice lie?

If our conclusion is correct that the money belonged to plaintiff. under these facts then defendant repaired the property as a mere volunteer. Without authorization or consent from plaintiff the voluntary act of repairing and restoring the property would not of itself establish any legal interest in these funds nor operate to dispossess plaintiff of full title thereto. Equity requires that any claim which defendant has must be asserted against his assignor. Decree for plaintiff.

LEVINE, PJ, and TERRELL, J, concur.