**In re Richard HAAS, aka Richard Melvin Haas, aka Richard M. Haas, dba Trak Manufacturing Corporation, dba G.B.M. Ltd., Debtor.**

**Bankruptcy No. 584–1348.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 26, 1987.

Paul Weick, Cuyahoga Falls, Ohio, for debtor in possession.

Mark Manlove, Garrettsville, Ohio, for Milton G. Pollock.

Cathy S. Drescher and Ronald Towne, Akron, Ohio, for Bank One.

Timothy R. Thomas, Ravenna, Ohio, for Smith & Sons Elec.

Richard A. Baumgart, Cleveland, Ohio, for Norco Equipment Co., Inc.

Small Business Admin., Richard J. French, Asst. U.S. Atty., Cleveland, Ohio.

## FINDING AS TO MOTION FOR AUTHORITY TO SETTLE INSURANCE CLAIM

H.F. WHITE, Bankruptcy Judge.

### I. Finding of Fact

On November 7, 1984 Richard Haas dba Trak Manufacturing Corporation *inter alia* filed a petition under chapter 11 of title 11 of the United States Code; to date, he has not filed a disclosure statement or a plan of reorganization. The debtor lists four secured creditors, two of which, Bank One and the Small Business Administration (herein "SBA"), are listed as having security interests in machinery.

The debtor suffered a fire loss on December 25, 1985, and on July 7, 1986 the debtor filed a motion for authority to settle an insurance claim with American Casualty Insurance Company alleging a settlement of $122,500 subject to a $500 deductible allowance. The debtor proposes to pay out of the settlement sum payments to the following types of individuals and/or groups:

   (1) the fee of the public insurance adjuster;

   (2) reimbursements of funds advanced post-petition and without leave of court by an individual to enable debtor to continue operating business;

   (3) expenses of moving equipment to a new location;

   (4) repair and restoration of damaged equipment, and replacement of materials and supplies; and

   (5) installment payments totaling $6,000 on Bank One's secured loan as adequate protection pursuant to an order entered June 4, 1985.

Notice of the motion and hearing thereon was sent to all proposed distributees of the settlement funds, but not to SBA or the insurer.

On July 3, 1986 a motion for assignment of insurance proceeds was filed by Milton G. Pollock, lessor of the building damaged by the fire, but was subsequently dismissed. On August 12, 1986 Milton G. Pollock *pro se* filed another motion for assignment of insurance proceeds with a supporting affidavit. On July 18, 1986 Bank One filed an objection to the debtor in possession's motion to settle insurance claims in which it claimed both a security interest in the collateral damaged by the fire and a right to payment of the insurance proceeds as loss payee under the insurance policy.

A hearing was held on the motion to settle insurance claim on July 21, 1986. Mr. Towne appeared for Bank One and stated that he has no objection to the settlement of the insurance claim, but as loss payee Bank One is entitled to the money it is owed on its secured loan being more than $67,000. He further stated that Bank One had no objection to the payment of the fee of Sill Adjusting Company, Inc., being $9,760. However, the parties could not agree to the payment of the proceeds into the court, and apparently, the check is payable to Mr. Weick, attorney for the debtor, but is at the insurance agency. From the testimony of Richard Haas it was established that a fire occurred at his plant in Garrettsville, Ohio on December 25, 1985. Sill Adjusting Company negotiated a $122,500 fire loss settlement [of the personal property and fixtures] with American States, the insurer, which is subject to a $500 deductible. Milton Pollock owns the building at the site of the fire loss.

Mr. Pollock appeared *pro se* and stated he incurred expenses and a mechanic's lien by McIntyre Heating to secure and winterize the building, and requested that he be paid from the insurance fund. Mr. Pollock *pro se* filed a motion for assignment of insurance proceeds in the approximate sum of $6,000. Mr. Haas admitted on the witness stand that he hired McIntyre.

The attorney for Smith & Sons Electric cross-examined Haas. The motion would allow this claimant $3,990, although the

claimant has billing statements for materials and labor totaling $6,518.21. (On July 22, 1986 Smith & Sons Electric filed a motion for payment as an unsecured, post-petition creditor, presumably as an administrative claim, for payment of $6,518.21; a hearing was held on this motion on November 24, 1986).

Haas testified that the funds loaned by James Carr, a friend of his, were used as operating expenses after the fire. He claims these advances were reflected in the DIP reports each month.

As the attorney for the debtor failed to bring in supporting documentation to the claims, and the insurance policy, the court adjourned the hearing. The attorney for Bank One stated that Bank One has a claim against the insurance company outside of this proceeding.

Another hearing was held July 28, 1986 at which the debtor entered into evidence the settlement portfolio prepared by Alex N. Sill Adjustment Co. along with miscellaneous correspondence (herein "settlement portfolio"), copies of cancelled checks with James Carr as drawer totaling $12,754.50, an insurance binder expiring August 28, 1986 for 690 S. Chestnut, i.e. the debtor's new place of business, and a copy of the insurance policy issued to Richard Haas for personal property located at Industrial Parkway in Garrettsville, Ohio. *See* Debtor's Exhibits 1–4. Bank One entered into evidence a copy of a promissory note dated September 23, 1983 in the sum of $145,027.73 payable to the order of Bank One signed on behalf of GBM Limited, a partnership, by Richard M. Haas, general partner, (herein "note"), a copy of non-titled personal property security agreement dated September 23, 1983 (without Exhibits A and B as referenced therein) with Bank One as secured party and GBM Limited as debtor (herein "security agreement"), a copy of a UCC filing time-stamped October 31, 1983 by the office of the secretary of state containing Exhibits A and B (herein "state UCC filing"), a copy of a UCC filing time-stamped October 31, 1983 by the Portage County recorder's office (herein "county UCC filing"), and a copy of a memo dated July 25, 1986 regarding principal, accrued interest, and amount due Bank One by Richard Haas and GBM Limited. *See* Bank One's Exhibits 1–5.

Mr. Haas testified that Bank One was secured by machinery and fixtures, and had no lien on inventory or receivables. The settlement portfolio states that the fire loss as to furniture and fixtures was limited to the sum of $43,171.55, although the value of those assets was set at $200,773.47. *See* Debtor's Exhibit 1. He testified that all equipment was either rebuilt or repaired, and destroyed equipment was replaced. He further testified that James Carr loaned him money to repair equipment, to buy new materials [for the manufacturing process], to relocate, etc. This was done without notice to the court or other interested parties. The cancelled checks submitted into evidence show payments by Carr to suppliers and for payroll. Mr. Haas reiterated in oral testimony the description of services and charges itemized at C through M inclusive within debtor's motion.

The substance and authenticity of Bank One's exhibits were established upon cross-examination of the witness. Mr. Haas testified that the loan, in part, was made to purchase foreclosed equipment from Bank One. He further testified that at the time of the loan, [GBM Limited] owned no raw materials, only machinery and equipment. The witness acknowledged paragraph 4 of the security agreement wherein he promises to keep the collateral insured. GBM Limited was originally a partnership between Haas and Robert Schwann. GBM owned the assets subject to the insurance contract, but as of June, 1984 Haas became the sole owner subject to his agreement to hold Schwann harmless and pay the Bank. The Bank allegedly received a copy of the buy-sell agreement.

Upon re-direct examination Mr. Haas changed his testimony somewhat. GBM was originally a partnership among Schwann, Bobill, Inc., and Haas; GBM is the obligee to the obligation owed the Bank, and Haas guaranteed that debt. At the time of the fire, Trak Manufacturing,

which is Haas doing business as Trak Manufacturing, was the owner of the inventory and work in process. Trak Manufacturing paid the premiums on the insurance policy.

Haas testified again that James Carr is his friend and loaned Haas $28,400 to rebuild machinery and purchase raw materials. Mr. Seegott, who also appears in the itemization within debtor's motion, is his biggest supplier of urethane and raw materials.

Mr. Weick admitted upon inquiry by the court that the SBA, which apparently has a security interest in certain equipment, patents and trademarks, does not know about this proposed insurance settlement. The court then advised Mr. Weick to join the SBA and the insurance company in the motion to settle the insurance claim as it appeared from the testimony that they were necessary parties. The hearing was continued to August 13, 1986, and the court advised Mr. Weick to bring in verification of the $51,000 and $28,500 claims as proposed to be paid from the insurance settlement fund by the motion.

At the August 13, 1986 hearing it was agreed that not all the parties were before the court to determine the validity and priority of liens, but the court could consider whether the insurance proceeds were properly payable to the Bank. The parties agreed to submit the matter on legal issues, and the court stated that the issue to be determined was whether the Bank is entitled to the insurance proceeds on the collateral even though the debtor has rebuilt and refurbished the collateral at the new business location.

In the interim, an appraisal at liquidation value was performed by Rosen & Company of the machinery and equipment located at the debtor's new place of business which indicated a value of $82,270. This appraisal was filed August 25, 1986.

On August 25, 1986 the debtor filed a brief in support of its motion for approval of the insurance settlement and distribution of proceeds. The debtor argues that equity compels the court to award the settlement proceeds as proposed by the debtor; Bank One's collateral has been fully restored, and to award it the proceeds would be to allow Bank One to profit undeservedly.

On October 8, 1986 Bank One filed a reply brief urging that principles of contract law should apply, and that third parties who repair and restore fire-damaged equipment at the request of the mortgagor without authorization of the loss payee do so at their own risk. It further argues that equitable principles do not compel an award of the proceeds as proposed by the debtor; it claims the debtor owes Bank One $168,667.86 and is in arrears on its adequate protection payments in the total sum of $11,500.

On October 24, 1986 the debtor filed a reply brief to Bank One's reply brief refuting several "statements of fact" made in Bank One's reply brief, but offering no further legal arguments, except to distinguish a case cited by Bank One.

## II. Issues presented

A. Whether the operative clause of the insurance policy is a standard or union mortgage clause, or a simple loss payee clause?

B. Who has a prior right to the proceeds of an insurance settlement for fire loss under a standard or union mortgage clause, the named mortgagee or a third party who repairs and rebuilds damaged property at the request of the mortgagor?

## III. Discussion of Law

A. *The operative claim of the insurance policy is a standard or union mortgage clause in which the mortgagee has an independent contract with the insurer which cannot be defeated by the negligence of the mortgagor.*

There is very little Ohio authority regarding which of competing claims to a fund created by payment for an insurable loss is superior. As a general rule, a covenant by the mortgagor that he will insure the premises for the benefit of a mortgagee creates an equitable lien in favor of the

mortgagee upon the money due for a loss upon a policy. 59 Ohio Jur.3d *Insurance* § 1173 (1985) (citing *Lange v. Grabe,* 11 Ohio C.C. 171, 5 Ohio Cir. Dec. 148 (1896)). Under a simple loss payable clause in a policy of insurance issued to a mortgagor, the effect is to appoint the mortgagee as payee for the amount of loss. *Id.* at § 1174. Under a "standard" or "union" mortgage clause by which it is stipulated that no act or neglect of the mortgagor shall invalidate the interest of the mortgagee in the proceeds of the policy, an independent contract of insurance exists between the mortgagee and the insurer, and the mortgagee is entitled to the proceeds despite the fraud or the contract violation of the mortgagor. *Id.* at § 1175. *But see, New Jersey Insurance Co. v. Ball,* 119 Ohio St. 550, 165 N.E. 41 (1929) (chattel mortgagee under simple loss payable clause is subrogated to rights of insured).

[T]he effect of a union mortgage clause is to make a new and independent contract of insurance between a mortgagee and the insurer, and to effect a separate insurance of the mortgagee's interest only dependent for its validity upon the course of conduct of the insurer and the mortgagee, unaffected by an act or neglect of the mortgagor of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior to or subsequent to the issuance of the mortgage clause.

*Ohio Farmers Insurance Co. v. Hull,* 45 Ohio App. 166, 169–170, 186 N.E. 823 (1932). *See also, Savings Society Commercial Bank v. Michigan Mutual Liability Co.,* 118 Ohio App. 297, 301, 194 N.E.2d 435 (1963); *State ex rel. Squire v. Royal Insurance Co.,* 58 Ohio App. 199, 201–202, 16 N.E.2d 342 (1938); and *Union Central Life Insurance Co. v. The Clinton Mutual Insurance Association,* 51 Ohio App. 20, 26–27, 199 N.E. 223 (1935).

At page two of the Declarations of the insurance policy issued by American Economy Insurance Company, Bank One, mortgagee, appears as an "other interest." *See* Debtor's Exhibit 4. At clause 19 of Form No. MP–00–90 (Ed.07–77) the policy states that the interest of any mortgagee shall not be affected by any act or neglect of the mortgagor, and upon demand by the insurer after failure of the mortgagor to pay the premium, the mortgagee shall pay. *Id.* It further provides a right of subrogation for the insurer upon payment of loss, and the option of paying the mortgage debt and of taking an assignment. *Id.* The operative clause is a standard or union mortgage clause.

B. *The named mortgagee has a prior right to insurance proceeds over a third party who repairs and rebuilds damaged property at the request of the mortgagor.*

"Where insurance is taken out by the mortgagor and made payable to the mortgagee as his interest may appear, the mortgagee is entitled to the insurance to the extent of his mortgage debt, holding the surplus, if any, after the extinguishment of his debt, for the benefit of the mortgagor." 5 *Couch On Insurance* § 29:67 (1984). "In case of loss the insurance proceeds stand as security for the mortgage debt in lieu of the property destroyed where the mortgagor agreed in the mortgage to keep the buildings on the mortgaged premises insured for the benefit of the mortgagee." *Id.* at § 29.68. But the mortgagee is only entitled to indemnity for loss of property to which its interest extends, and if the insurer overpays the mortgagee, the mortgagor may recover the excess payment from the mortgagee. *Id.* at § 29.72.

The lien of the mortgagor to the proceeds of the insurance policy is superior to the lien or interest of general creditors of the mortgagor. *Id.* at § 29.87 (citing *inter alia Paskow v. Calvert Fire Insurance Co.,* 579 F.2d 949 (5th Cir.1978) ), *See also,* 5A J. Appleman and J. Appleman, *Insurance Law and Practice* § 3407 (1970) (the insured can give nothing by way of assignment to person making repairs and mortgagee would prevail over person making repairs on premises). In the *Royal Insurance* case the court was called upon to determine which had a superior claim to insurance proceeds payable for a fire loss, a repairman who substantially restored the

property or the mortgagee. By the terms of the mortgage which was in default at the time of the fire loss the owner of the real property was required to furnish fire insurance in an amount equal to the loan. 58 Ohio App. 199, 16 N.E.2d 342. A rider to the policy was issued making the proceeds payable to the mortgagee "as its interest may appear." *Id.* at 199–200, 16 N.E.2d 342. The mortgagee demanded the proceeds but payment to it was refused, and without knowledge of the liquidator [of the lending bank], the repairman proceeded to restore the property. The court found that the obligation of the insurance company to pay the mortgagee all the proceeds, which were less than the amount owing on the mortgage, contractual. "A loss occurring after the mortgage is in default and the mortgage being greater than the proceeds of the policy, the mortgagee is the real party in interest entitled to the funds for which it may maintain an action." *Id.* at 202, 16 N.E.2d 342 (citations omitted). The repairman acted as a mere volunteer, and the voluntary act of restoring the property does not of itself establish any legal interest in the insurance proceeds. *Id.* at 203, 16 N.E.2d 342.

The court noted in dictum that if the proceeds of the fire loss had been *greater than* the mortgage debt, which is apparently true in the instant case, the mortgagee would hold the excess for the benefit of the mortgagor to whom it would be obliged to account. *Id.* at 203, 16 N.E.2d 342 The issue is who has a legal right to the proceeds; the voluntary act of repairing the property does not dispossess the mortgagee of its right. *Id.* Any claim which the repairman has must be asserted against the mortgagor. *Id.* at 204, 16 N.E.2d 342.

One treatise on insurance describes the three common clauses, and their effects, as follows:

(1) under the standard or union mortgage clause, the mortgagee has an independent contract with the insurer which cannot be defeated by the negligence of the mortgagor;

(2) under the loss payable clause, the mortgagee is an agent for collection, or the appointee to collect insurance proceeds; and

(3) under the "as interest appears" clause, the mortgagee is entitled to the insurance to the extent of his mortgage debt, holding the surplus for the benefit of the mortgagor.

5 *Couch On Insurance* §§ 29:65–29:67 (1984). Under each of the three clauses the mortgagee has a prior right to the proceeds over the competing claim of the mortgagor.

Although all the Ohio cases cited apparently involved mortgages in default and insurance proceeds less than mortgage debt, no case expressly so limited its holding to those facts. The court in *Royal Insurance* stated in dictum that the mortgagee would hold the excess for the benefit of the owner. Even in the absence of a loss payable clause, a mere covenant to insure creates an equitable lien in favor of the mortgagee upon the money due for a fire loss claim upon the policy. The security agreement provides at paragraph four that the debtor, GBM Limited, will keep the collateral insured. *See* Bank One's Exhibit 2.

The weight of authority indicates that the mortgagee has a prior right to the proceeds over the mortgagor, and a mortgage debt in excess of a fire loss is not a condition to that prior right. Although Bank One has variously stated a balance due of $168,667.86, reply brief filed October 8, 1986 at 6, and of $67,564.01, objection to motion to settle insurance claim at paragraph four, the debtor admits in his motion that he is delinquent in his payments to Bank One in the sum of $6,000, at least at the time the motion was filed, presumably under the terms of the adequate protection order entered June 4, 1985. *See* motion filed July 7, 1986 at paragraph 5(K). It is alleged that the deficiency arose by reason of the fire and the debtor's inability to ship goods.

The extent of the mortgagee's interest in the settlement fund, and any other competing claims to the fund, is another issue for later determination by this court. Although the security agreement and UCC filings cover all inventory, raw material,

work in process, supplies, etc., the testimony of Richard Haas upon cross-examination on July 28, 1986 was that GBM Limited owned only machinery and equipment at the time the loan was made and the security interest granted. Whether Bank One had a security interest in after-acquired property of the debtor is another issue which must be determined in deciding the extent of the mortgagee's interest.

### IV. Conclusion

All the parties needed to determine the validity and priority of liens or other interests are not before the court. The limited issue is whether the insurance proceeds are properly payable to various claimants as proposed by the motion of the debtor for authority to settle insurance claims. A determination as to the extent of Bank One's interest in the insurance proceeds, in the face of competing claims to, and interests in, these proceeds, which claimants are not all before the court, cannot now be made. There may be other claims to the insurance fund, e.g. the insurance company, which are not represented here. There is considerable dispute between the parties represented here as to the extent of Bank One's interest, the debtor claiming it is limited only to equipment, and Bank One claiming it extends to raw material, inventory, etc. However, from the evidence before the court, being the testimony of Haas, the security agreement and UCC filings, the court concludes that Bank One has a prior right to the funds as compared with at least most, if not all, of the competing claims as itemized within the motion of the debtor. The extent of its interest, or its relative priority, is not before the court at this time.

Many of the expenses incurred as itemized by the debtor in its motion constitute expenses of moving to a new location and funds advanced by a third party (a friend of the debtor) for repair and replacement of equipment without an order of the court allowing said loan. 11 U.S.C. § 364(b). Many of the problems that have occurred in this case could have been avoided if the debtor, who was represented by able counsel, would have made application to the court. Unfortunately, this did not happen. These expenses may constitute administrative expenses; however, no administrative claimant has filed a request for payment. Therefore, if the claimants file for administrative expenses they must be put to their proof upon their individual applications. 11 U.S.C. § 503(b) and Bankr. R. 2016(a), 2002(a)(7) and 2002(c)(2). Based upon the foregoing, the motion of the debtor for authority to settle insurance claim filed herein on July 7, 1986 must be denied. A separate order in accordance with this finding will be entered hereon.