In re Dale L. JOHNSON, Elizabeth J. Johnson, Debtors.

Bankruptcy No. 86–20718.

United States Bankruptcy Court, D. Montana.

Nov. 2, 1988.

Harold V. Dye, Missoula, Mont., for debtors.

Julio K. Morales, Missoula, Mont., for King.

Mark D. Lodine, Sp. Asst. U.S. Atty., Missoula, for FHA.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 case, an Order of Confirmation of Debtors' Chapter 11 Plan was entered on April 12, 1988, "upon condition that the claim of Jean L. King is allowed to include attorney fees of $14,500.00 payable within 90 days of this Order". The Debtors moved to amend the Order regarding King's claim, and the Court on May 16, 1988, granted partial relief by reducing the fees to $10,325.00 plus costs of $448.60, to be paid within 90 days of the Order. Both the Debtor and King have secured extensions of time to appeal, and those appeals are proceeding without any stay of the Order of Confirmation.

On July 19, 1988, King filed a voluntary withdrawal of her appeal on grounds that a "fire recently destroyed the dairy of the Debtors and thus the Plan presently under scrutiny would become moot". Then, on September 21, 1988, King filed a Motion to Convert or Dismiss this Chapter 11 case, upon the grounds that (1) the Debtor failed to pay the attorney fees set by the Order of May 16, 1988, within 90 days of such Order, (2) fire destroyed the dairy property so that Debtors, with the insurance proceeds are unable to consummate the Plan, and (3) the Debtors failed to deed to Farmers Home Administration a parcel of property as provided in the Plan. On September 22, 1988, the Debtors filed a "Motion to Compel endorsement on Insurance Settlement Check and Request for Hearing". By such motion, the Debtors recite the store and barn from which Debtors operate their dairy and video business was destroyed by fire on July 2, 1988, and secured creditors Jean L. King and Farmers Home Administration were named as loss payees under the fire policy, so that the draft of $150,000.00 was issued by the insurance carrier payable to the Debtors, John I King Estate and Farmers Home Administration. The motion recites, and subsequent hearing on

all motions held on October 3, 1988, confirmed, that King refuses to allow the insurance proceeds to be used to rebuild the collateral, as is the plan of the Debtors. Upon hearing the matter, the Court instructed the parties to endorse the insurance draft so the funds could be placed on deposit at interest pending resolution of the present controversy.

The insurance contract submitted to the Court shows the named insured is Dale L. & Berry Joe Johnson, DBA Dale's Dairy, and the United States of America, Farmers Home Administration is endorsed thereon as mortgagee. Further attached to the policy is a "Contract of Sale Clause", dated 3–23–88, naming the vendor as John I. King Estate, and providing:

"If loss under this policy be payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy shall be first applied to the payment of such payee's interest, and the balance, if any, subject to all the terms and conditions of this policy, shall be payable to said vendor and/or said vendee in the manner hereinafter provided in paragraphs designated 'First' and 'Second' hereof. If this policy be not payable to a mortgagee, trustee or beneficiary under deed of trust, the proceeds of this policy, subject to all terms and conditions, shall be payable to said vendor and/or said vendee as follows:

FIRST: To said Vendor, to an amount not exceeding the balance unpaid, at the time of loss, upon the contract of sale above referred to; and

SECOND: The balance, if any, to said Vendee.

PROVIDED ALWAYS, HOWEVER, THAT IN NO EVENT SHALL ANY OF THE ABOVE PAYMENTS, OR THE AGGREGATE THEREOF, EXCEED THE AMOUNT FOR WHICH THIS POLICY IS WRITTEN, OR THE AMOUNT FOR WHICH THIS COMPANY MAY BE LIABLE ON ANY LOSS THEREUNDER; AND PROVIDED FURTHER, THAT IF AT THE TIME OF ANY LOSS HEREUNDER THERE BE OTHER INSURANCE, WHETHER VALID OR NOT, UPON THE PROPER-

TY DESCRIBED UNDER THE ITEM(S) SPECIFIED IN THIS CONTRACT OF SALE CLAUSE, THIS COMPANY SHALL NOT BE LIABLE UNDER THIS POLICY FOR A GREATER PROPORTION OF ANY LOSS ON SAID PROPERTY THAN THE AMOUNT INSURED BY THIS POLICY UNDER SUCH ITEM(S) BEARS TO THE ENTIRE INSURANCE COVERING SUCH PROPERTY, ISSUED TO OR HELD BY ANY PARTY OR PARTIES HAVING AN INSURABLE INTEREST THEREIN AS VENDOR, VENDEE, MORTGAGEE, TRUSTEE OR BENEFICIARY UNDER DEED OF TRUST."

As can be readily determined from the policy and endorsements, the proceeds are payable first to Farmers Home Administration as mortgagee, then, if a balance is left, to King "to an amount not exceeding the balance unpaid at the time of loss, upon the contract of sale." FHA under the confirmed Plan was owed $240,977.24, and its debt was to be paid in part by transfer of a parcel of property valued at $84,000.00, and then payments on the balance beginning December 1, 1991, at the rate of $2,237.06 per month. The deed has now been delivered to FHA, so the unpaid balance due on its claim is $156,977.00, which exceeds the insurance proceeds. Under the Contract for Deed between King and the Debtors, which balance due was restructured in the confirmed Plan, the Debtors "shall keep the premises insured in an amount of not less than $35,000.00, together with a mortgage clause to John I King and Jean L. King". There is no provision in the contract as to the disposition of the insurance proceeds upon loss and, therefore, the Court must look solely to the insurance contract and mortgagee payable clause.

The only question is whether the proceeds are property of the estate to be used by the Debtors in reconstruction of the improvements after the Plan has been confirmed. Creditor, King, asserts that the portion of the insurance proceeds representing the mortgagees' benefits are not part of the estate. However, the case law cited by King does not support this posi-

tion. For example, in *In re Haas*, 71 B.R. 335 (Bankr.N.D.Ohio 1987) and *In re Larymore*, 82 B.R. 409 (Bankr.D.S.C.1987), the courts were only asked to decipher the priority of rights to insurance proceeds. In *Haas* supra, debtor made a pre-confirmation request to pay out the insurance proceeds in a manner that placed claims for repair and restoration, incurred without leave of the court, above the claim of the loss payee named in the debtor's insurance policy. The Court denied the request, finding that the loss payee had a superior right to such proceeds. *Haas* at 339. *Larymore*, supra, was a Chapter 7 case and involved a fire which occurred prepetition. The court held that the named loss payee had a superior interest to the insurance proceeds over the claim of the bankruptcy trustee, with the trustee entitled only to the proceeds remaining after payment of the loss payee's secured claim. *Larymore* at 425, 426. Although both of these cases did give a named loss payee first entitlement to insurance proceeds, neither case stated that such proceeds were not property of the estate.

On the other hand, in *In re Hawkeye Chemical Co.*, 71 B.R. 315 (Bankr.S.D.Iowa 1987), the court specifically held that prepetition insurance proceeds in which certain creditors asserted an interest were property of the estate. The court further held that the debtor would be allowed to use these proceeds as cash collateral since there was sufficient equity in debtor's assets to adequately protect the interests of the creditors in the proceeds. In reaching this conclusion, the court stated:

"Resolving who has the superior right to insurance proceeds, ... is not a condition precedent to ruling on the debtor's request to use the proceeds. As long as the debtor adequately protects such interest, the debtor may use such property of the estate." *Hawkeye* at 320.

This approach is analogous to the case of *Connecticut General Life Insurance Co. v. Universal Insurance Co.*, 838 F.2d 612 (1st Cir.1988), cited by King, wherein the court stated it was error to pay the insurance proceeds to the bankruptcy trustee *without safeguarding the interests of the*

*named loss payee. Id.* at 615. (Emphasis added). These cases indicate a willingness by the courts to allow a Chapter 11 debtor to apply insurance proceeds, to which others hold a superior right, toward his rehabilitative efforts, as long as debtor is able to adequately protect the claims of those holding such superior interests.

I find the same rationale should be applied to the facts of the instant case. The fact that the fire in the present case occurred post-petition does not alter the Debtors' ability to adequately protect the interests of those creditors asserting rights superior to theirs to the insurance proceeds at issue. In fact, the Debtors have actually provided such protection under the terms of their confirmed Plan.

The only difference between post-confirmation insurance proceeds and pre-confirmation proceeds is the manner in which the Debtor's rights are characterized. As noted above, prior to confirmation, the proceeds are considered property of the estate. After confirmation, however, the bankruptcy estate no longer exists. As stated in *In re Tri–L Corp.*, 65 B.R. 774 (Bankr.D. Utah 1986), "[T]he estate exists only until confirmation of a plan under Section 1129, at which time all of the property of the estate vests in the debtor and the estate ceases to exist." *Id.* at 777. But, as this quote indicates, the debtor's entitlement to such prior property of the estate does not extinguish upon confirmation, since all such property then vests in the debtor. This principle is codified in 11 U.S.C. § 1141(b) which provides,

"Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all the property of the estate in the debtor."

Furthermore, 11 U.S.C. § 1141(c) provides:

"... after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of all creditors, equity security holders, and of general partners of the debtor."

The effect of these two sections is that unless the plan provides otherwise, the con-

firmation of a plan vests all of the property of the estate in the debtor and releases it from all claims and interests of creditors, equity security holders and general partners. *Notes of Committee on the Judiciary, Senate Report No. 95–989.* Thus, once the Debtors' Plan was confirmed, they were vested with the subject property, subsequently destroyed by fire, and covered by the insurance proceeds at issue. By allowing the Debtors to retain control over these proceeds, this Court is not only following the language of § 1141, but is also allowing the Debtors to implement their Plan in accordance with § 1142(a) which provides:

"Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court."

The court in *In re Tri–L Corp.,* supra, discussed this section and the bankruptcy court's jurisdiction to carry out the intent of this section by stating:

"The confirmation of a Chapter 11 plan does not automatically terminate the jurisdiction of the bankruptcy court ... Moreover, the court may expressly retain jurisdiction over the plan, during its consummation, under a provision of the plan itself or the order of confirmation. See 5 *Collier on Bankruptcy* ¶ 1142.01[1], at 1142–4 to 1142–5 (15th Ed. 1986); 11 *Remington on Bankruptcy* § 4648, at 467–68 (K. Hayes rev. ed. 1961).... Pursuant to Section 1142(a), the plan proponent, in this case the debtor, is required to 'carry out' the plan of reorganization, which normally includes the following: ... 10. Substantially consummating the plan; ...... The basic purpose of Chapter 11 is to rehabilitate the debtor through a restructuring of its debts under a plan of reorganization. It is contrary to the purposes of the Code and the judicial function for the bankruptcy court to retain jurisdiction over every aspect of the reorganized debtor. *Nevertheless, the court must retain some jurisdiction after confirmation to*

*see that the plan is consummated."* *Id.* at 778, 779. (emphasis added).

Based on all of the foregoing, I find that the Debtors are entitled to the insurance proceeds at issue in order to effectively consummate their Plan of Reorganization, with creditors King and Farmers Home Administration having their interest in such proceeds protected through the treatment afforded their claims under the terms of the confirmed Plan. In sum, the loss payee clauses are voided in the insurance contract in deference to (1) the secured creditors retaining their liens against the Debtors' property, and (2) the need of the Debtors to consummate the Plan. Accordingly,

IT IS ORDERED that the Debtors' Motion to Compel Endorsement on Insurance Settlement check is granted with such proceeds to be used for the purpose of reconstructing their improvements.