In re JACKSON PRECISION DIE CASTING, INC., Debtor.

General Motors Corporation, Plaintiff,

v.

Inrecon, LLC, Defendant.

**Bankruptcy No. 01–54891.
Adversary No. 02–4009.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

April 3, 2003.

Judy B. Calton, Esq., Honigman, Miller, Schwartz and Cohn LLP, Detroit, MI, for Plaintiff.

Richard E. Segal, Esq., West Bloomfield, MI, for Defendant.

## DECISION and ORDER

Burton PERLMAN, Bankruptcy Judge.

In this action, General Motors Corporation ("GM") filed a complaint seeking, *inter alia,* a determination that the interest of defendant Inrecon LLC ("Inrecon") in the insurance proceeds from a policy insuring the facility of debtor Jackson Precision Die Casting, Inc. ("Jackson") against fire is invalid or junior to that of LaSalle National Bank ("LaSalle"). GM also seeks in its complaint a determination that Inre-

con's construction lien on Jackson's facilities is invalid because it was filed after the statutory deadline. In its answer, Inrecon denied that its interest in the insurance policy is invalid or junior to that of LaSalle. Inrecon also denied that the construction lien on Jackson's real estate is invalid.

Currently, there are three motions under consideration. GM filed a Motion for Summary Judgment, basing it on four grounds: 1) Inrecon has the burden of proving the amount and validity of its claim, and has failed to do so; 2) Inrecon does not have a security interest in Jackson's insurance policy or its proceeds; 3) the claim of Inrecon based on its purported assignment is junior to LaSalle's interest in the insurance policy and its proceeds; and 4) that the claimed lien on Jackson's real estate be disallowed. Inrecon responded and filed a counter-motion for summary judgment. Inrecon asserts that it is entitled to summary judgment because there is no genuine issue of material fact that debtor assigned the insurance proceeds to Inrecon as payment for labor and materials. Along with its counter-motion for summary judgment, Inrecon also filed a motion to consolidate this adversary proceeding with adversary proceeding titled *Inrecon LLC v. LaSalle National Bank,* Case No. 01 C 8478, which was filed in the United States District Court for the Norther District of Illinois. This Illinois District Court case was ordered transferred to the Eastern District of Michigan on or about January 15, 2002. LaSalle filed a response objecting to any type of consolidation.

What is before the court is curious because GM, plaintiff in the adversary proceeding, and movant here, is not a direct party in the controversy which the court is here called upon to resolve. The parties directly involved in the present controversy are LaSalle and defendant Inrecon, and the immediate issue is which of those two parties is entitled to certain insurance proceeds. The interest of GM is ancillary to that controversy. LaSalle in the present case has a first security interest in assets of the debtor, while GM has a secondary interest. If LaSalle is successful in securing the insurance proceeds, its claim will be reduced, and thereby the value of the claim of GM will be enhanced. This explains why it is GM which presses the present motion.

Based on the documents placed on the record by the parties, the Court makes the following findings of fact. The debtor, which is not a party in this adversary proceeding, was an automotive supplier in Michigan. On June 6, 2000, a fire occurred at debtor's Hupp Avenue facilities. The debtor hired Inrecon to demolish the fire damaged facilities. On July 19, 2000, the debtor signed a Work Authorization that granted Inrecon the right to insurance proceeds from the fire damage. Inrecon then performed the demolition work, which was completed by September 3, 2000. The debtor's insurance company, Reliance, paid the insurance proceeds arising from the fire to LaSalle. On August 3, 2001, the debtor filed for Chapter 11 Bankruptcy protection. On October 2, 2001, over a year after Inrecon completed its demolition work, it filed a construction lien on the debtor's Hupp Avenue real estate.

A hearing was held on the motions of both GM and Inrecon on September 9, 2002. At the hearing, LaSalle made an appearance opposing Inrecon's motion for summary judgment and Inrecon's motion to consolidate and supporting GM's Motion for Summary Judgment. Also, at the hearing, the parties notified the Court that Inrecon's proceeding against LaSalle, which was filed in Illinois, was in the pro-

cess of being transferred to this Court.[1] The parties also agreed that the resolution of the priority and lien claims should also resolve Inrecon's claim against LaSalle. The Court reserved decision on all motions.

## DISCUSSION

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c), made applicable in bankruptcy by F.R.B.P. 7056. The moving party bears the burden of showing that there is no issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986).

The standards the court must use to evaluate motions for summary judgment are not different where the parties submit cross-motions. *Taft Broadcasting v. United States*, 929 F.2d 240, 248 (6th Cir.1991). Submission of cross motions for summary judgment does not necessarily result in the court granting summary judgment to one of the parties. *Id.* The court must review the evidence for genuine issues of material fact and "...evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)).

The motions presently considered involve two different issues. The first issue deals with Inrecon's claim of a valid construction lien on the debtor's real estate. The second issue deals with the competing claims by LaSalle and Inrecon to the insurance funds arising from the fire damage.

### A. The Construction Lien

■ On June 28, 2000, Inrecon was hired by debtor to repair fire damage. According to the evidence, "the last day of providing the labor or material was the 3rd day of September 2000." Over a year after September 3, 2000, and thus in excess of the 90–day deadline for filing of a construction lien, Inrecon attempted to claim a construction lien in Jackson's real estate by filing a Claim of Lien on October 2, 2001. The Claim of Lien itself shows that the lien was filed outside of the ninety-day period described in the Construction Lien Act. Inrecon admits as well that it never filed a financing statement (Inrecon's Motion for Summary Judgment). GM argues that the construction lien is invalid because it did not comply with the ninety-day deadline for filing construction liens. Inrecon argues that its construction lien is valid because Inrecon relied on the assignment of insurance proceeds when it did not initially file its lien.

According to M.C.L.A. § 570.1111, a construction lien ceases to exist if it is not recorded in the county office of the registered of deeds within ninety days after the last furnishing of labor or material.[2] In

1. The Court was actually told by the three parties that the Illinois litigation had been transformed to the District Court in Michigan but that the files were somehow "lost" in the transfer.

2. 570.1111. Claim of lien
   Sec. 111. (1) Notwithstanding section 109, the right of a contractor, subcontractor, la-

borer, or supplier to a construction lien created by this act shall cease to exist unless, within 90 days after the lien claimant's last furnishing of labor or material for the improvement, pursuant to the lien claimant's contract, a claim of lien is recorded in the office of the register of deeds for each county where the real property to which the improve-

*Northern Concrete Pipe, Inc. v. Sinacola Companies–Midwest, Inc.,* 461 Mich. 316, 321–22, 603 N.W.2d 257 (1999), The Michigan Supreme Court held that the ninety-day deadline was absolute and that there was no statutory "substantial compliance" provision. The court reasoned that the "ninety-day period of limitation advances policies of preventing stale claims and protecting defendants from the fear of protracted litigation." *Id.* at 322, 603 N.W.2d 257 (citing *Chase v. Sabin,* 445 Mich. 190, 199, 516 N.W.2d 60 (1994).).

This court is bound to follow the Michigan rule on filing and perfection of construction liens. Inrecon has admitted that it did not file or perfect the construction lien within ninety days. Inrecon's claimed construction lien is therefore not valid.

B.   Competing Claims.

■   Having found that Inrecon cannot base its claim to the insurance proceeds on a construction lien, we turn to the respective claims by Inrecon, and on LaSalle's behalf by plaintiff, to the insurance proceeds here in question paid by Reliance for the demolition work performed by Inrecon. Inrecon's claim to those proceeds is based upon an assertion that there was an assignment by debtor to Inrecon of the insurance proceeds for the work that Inrecon was about to undertake. The LaSalle claim is based upon language in the mortgage held by LaSalle on collateral, including the real estate upon which the fire loss occurred. Thus, the claims of both LaSalle and Inrecon are based on perceived contract rights. If the court were to decide the controversy between LaSalle and Inrecon on the basis of contract rights, LaSalle would prevail simply because its right arose first.

■   This court is not willing, however, to reach a conclusion on the basis of contract rights. To do so would mean that LaSalle would be unjustly enriched at the expense of Inrecon. That is, the work that Inrecon did benefitted LaSalle because it worked toward the restoration of the value of LaSalle's collateral after the fire occurred. To allow LaSalle to have this benefit and also to collect the insurance proceeds for the benefit would be manifestly unjust. Equitable principle do not permit this outcome. There is no doubt that the equitable principle of restitution for unjust enrichment is the law in Michigan. The Supreme Court of Michigan, relying on the Restatement of Restitution, so held in *Michigan Educational Employees Mutual Ins. Co. v. Morris et al.,* 460 Mich. 180, 197–198, 596 N.W.2d 142, 151 (1999). Of interest also is *Kossian v. American National Ins. Co.,* 254 Cal. App.2d 647, 62 Cal.Rptr. 225 (Ct.App.Cal. 5th Dist.1967).

Various cases discussed by the parties are not relevant to the present issue. GM relied upon *In re Haas,* 71 B.R. 335 (Bankr.N.D.Ohio 1987). At the outset, we note that in that case the loss occurred after the bankruptcy petition was filed. This is in sharp contrast to the situation in the case now before the court, because in our case the fire loss occurred pre-petition and neither party disputes that the insurance proceeds paid did not become property of the bankruptcy estate. In addition, in *Haas* the dispute resolved by the court arose prior to the disposition by the insurance company of the fire damage proceeds. Further, in *Haas* it was the debtor which sought approval of the bankruptcy court of distribution of the insurance proceeds.

ment was made is located. A claim of lien shall be valid only as to the real property described in the claim of lien and located

within the county where the claim of lien has been recorded.

The court, in the main, then proceeded to resolve a dispute as between the debtor and its primary secured lender to the insurance proceeds. While the debtor suggested the application of equitable principles in resolving the matter, the court without comment proceeded to decide the question entirely as a legal matter, quoting extensively from treatises on insurance law. While we could distinguish the case on its facts because the *Haas* case involves litigation between the two parties to the mortgage contract, while here the dispute is between a good-faith third party and the mortgagee, in the end we decline to be guided by the holding of the *Haas* court, for we believe that equitable principles should control here.

Plaintiff also cites *In re McLean Indus., Inc.*, 132 B.R. 271 (Bankr.S.D.N.Y.1991). Plaintiff simply relies upon this case for the proposition that a lender named as an assured and as the loss payee, was the proper recipient of insurance benefits. The case, however, is entirely distinguishable from that before us because in that case the insurance proceeds were for a loss occasioned by damage to a vessel; the damage was not repaired and so no good faith repair contractor is claiming insurance proceeds in the *McLean* case.

Plaintiff also advances the case of *Wray–Dickinson Co. v. Commercial Credit Co., Inc.*, 192 So. 769 (Ct.App.La. 2nd Cir.1939). While that case does involve a claim by a repairman to insurance proceeds, it is a non-bankruptcy case decided under the laws of the state of Louisiana. Clearly, the court considered no equitable considerations in reaching its conclusion, an approach which this bankruptcy court, a court in which equity often comes into play, finds not to be acceptable precedent.

Plaintiff also calls our attention to cases such as *Fidelity Mut. Life Ins. Co. v. City Nat'l. Bank of Fairmont*, 95 F.Supp. 276

(N.D.W.Va.1950) and *Evans v. Joyner, et al.*, 195 Va. 85, 77 S.E.2d 420 (1953), both of which are non-bankruptcy cases decided under state law. They are cited for the familiar proposition that first in time is first in right. They contribute nothing to a resolution of the dispute before this court.

In light of the foregoing discussion, plaintiff's motion for summary judgment is denied, while that of defendant claiming entitlement to the insurance proceeds is granted.

Defendant's motion to consolidate this adversary proceeding with that transferred from Illinois is denied. Principles of preclusion render such consolidation unnecessary.

So Ordered.