**UNION CENTRAL LIFE INS CO v CLINTON MUTUAL INS ASSN et**

Ohio Appeals, 1st Dist, Clinton Co

No 104. Decided April 26, 1935

N. P. Clyburn, Washington Court House, Barns & Barns, Wilmington, and Dinsmore, Shohl & Sawyer, Cincinnati, for plaintiff in error.

John Harlan, Wilmington, and C. Luther Swain, Wilmington, for defendant in error.

## OPINION

By HAMILTON, J.

The question for determination, therefore, resolves itself into whether or not the taking over of the property by the mortgagee is such a "change of ownership" as would work a forfeiture under the loss payable clause. There is no forfeiture provision in the policy. The fact is, as suggested by the trial court, that the policy is exceptionally free from conditions. The policy does not provide that the insured must be the owner of the property, does not provide for forfeiture for any reason, and there is no provision against alienation. The policy is very sweeping in its terms in favor of the validity of the insurance. The question arises under the "loss payable clause" rider only.

In our view of the case, we do not find it necessary to determine when the title passed to the plaintiff Insurance Company. Although not so deciding, we will consider that the title passed on the 2nd day of December, 1931 by the deed from Van Pelt to Hill, Hill being the agent of the plaintiff company.

It will be noted that the defenadnt insurance association does not contend that the transfer from Van Pelt to Hill, by the warranty deed, was a transfer of the ownership to Hill, an issue which might have been made between the defendant association and the plaintiff company. The decisive question in the case, therefore, is: Did the taking over of the property by the plaintiff Insurance Company, the mortgagee, by voluntary transfer, constitute such a change of ownership as would work a forfeiture under the "loss payable clause", attached to the policy as to change of ownership. The trial court, as indicated in its opinion attached to the brief, found for the Mutual Association on the proposition that the plaintiff company would not be entitled to the insurance due and payable to Van Pelt. The court stated: "Van Pelt ceased to have any interest in said real estate on the 2nd day of December, 1931. The contract between plaintiff and the defendant association was to pay plaintiff, as its interest might appear, anything due Van Pelt under the policy. As Van Pelt ceased to have any interest in the property four months before the fire, there is nothing due him, and therefore, nothing due plaintiff."

Under the earlier rule, based on the "loss payable clause", which simply allocated such part of the money to the mortgagee as his interest might appear, the court was correct. It was held that such clause provided merely for an allocation of the proceeds of the policy, and that it is simply an order by the insured to the company to pay a certain part of the money due him to the mortgagee by reason of his obligation to it. Therefore, anything that would void the policy in the hands of the mortgagor would also void it as to the mortgagee.

There has arisen in later years a loss payable clause known as the standard clause, which stipulates that in case the loss is payable to the mortgagee, his interest in the proceeds shall not be invalidated by the act or neglect of the mortgagor or owner of the insured property. The loss payable clause in question contains the stipulations of the standard clause. The uniform holding throughout the states seems to be to the effect that the standard clause creates a new and distinct contract between the mortgagee and the Insurance Company.

While the exact question concerning real estate has not been before the courts of Ohio as to change of ownership which would work a forfeiture, we have some cases which show the trend of the courts of this state. In **Ohio Farmers Ins. Co. v Hull** ct, 45 Oh Ap, 166 (15 Abs 17) the court held in substance that the effect of the standard or union mortgage clause was to make a new contract of insurance between the mortgagee and the insurer, and to effect a separate insurance of the mortgagee's interest. To a like effect the case of Savarese v Ohio Farmers Insurance Co., 260 N. Y., 45. There are many cases throughout the country to the same effect.

These rules effectually take the case under consideration out of the former rule under the "open clause provision", which merely appointed the payment of the proceeds of the policy. We think it well-established that under the standard clause, the mortgagee has a contractual interest in the policy, and the case will be considered from that standpoint.

The provision against the change of ownership was evidently for the purpose of protecting the insurer in the event of the ownership passing into the hands of per-

sons not acceptable to the Insurance Company, and thus incidentally increase the hazard; that the Insurance Association had a right to know the person whom it was insuring as well as the property. The reason for the provision would not obtain under the standard clause since the insuring company knows the mortgagee whom it contracts to protect by attaching the rider. The reason for the provision not being present in cases like this one, we are of opinion that the change of ownership clause refers to the change to a third person, not a party in interest. The rule deduced from the unbroken line of decisions is to the effect that where the mortgagee comes into possession of the whole title by virtue of foreclosure or transfer, or taking possession of the premises, it is not such a change of ownership as is contemplated in the loss payable clause.

In the decisions the courts have indulged in lengthy analyses and arguments to sustain this position, and we will not engage in such analysis. Leading cases, however, on the subject are: Kimberley & Carpenter, Inc. v National Liberty Ins Co., 157 Atl., 730, and many cases cited thereunder; Esch Bros. v Home Ins. Co. of New York, 78 Iowa, 334; Bailey v American Central Ins. Co., 13 Fed. 250; Pioneer Savings & Loan Co. v St. Paul Fire & Marine Ins. Co., 68 Minn. 170; Fort Scott Bldg. & Loan Association v Palatine Ins. Co., 74 Kans., 272; Southern States Fire & Casualty Co. v Napier, 22 Ga. App., 361; Central Ins. Co. of N. Y. v Rothholz, 222 Ala., 574, and many other cases. That the courts of Ohio are in accord therewith is indicated by the pronouncements in chattel mortgage cases. In the case of Washington Ins. Co. v Hayes, 17 Oh St, 432, the mortgagor transferred mortgaged goods covered by the policy to the mortgagee, and the court states in the syllabus:

"Where a fire insurance policy contains a provision that, if another insurance shall be made on the property thereby insured, not consented to in writing thereon, or if the property shall be sold, the policy shall be void, HELD—

"1. That if the property so insured was, at the time the policy was made, under a mortgage, and the policy, with the assent of the company making the same, was assigned to the mortgagee, the delivery of the possession and control of the property to the mortgagee subsequent to the date of the policy, is not such a sale as will invalidate the policy."

To the same effect is the holding in the case of West et v Citizens Insurance Co., 27 Oh St, 1.

It is urged in the brief for defendant that it is a special type of insurance association, organized and operating under special sections of the Ohio General Code, and not under the usual sections pertaining to insurance companies. Counsel quote in their brief the last part of §9597, GC, as follows:

"* * * But in no instance shall the power to insure against losses by fire or tornadoes be exercised to other than members thereof."

If the defendant Insurance Association was without power to place a "loss payable clause" rider on the policy, it ought not to be heard to say in this review that what it did do was ultra vires. Such a defense must be pleaded, and, moreover, an ultra vires contract which has been fully executed by one of the parties and the other party has received the benefit of the contract, the party who has received the benefit is estopped to question the validity of the contract. The defendant Insurance Association did receive premiums on the contract. and it knew the conditions of the policy and the "loss payable rider" attached, and it admits in its answer that the insured performed all things which he was required to do. Moreover, we do not consider that the section in question, §9597 GC, prohibits the placing of the "loss payable clause" on the policy. It did not insure the property belonging to the plaintiff Insurance Company. The plaintiff Insurance Company had a mortgage lien, which it was sought to protect by the fire insurance, and for that purpose it was not necessary that it be a member of the Insurance Association. Moreover, this question is answered in the case of Richards, Receiver v Lipp Co., 69 Oh St, 359. There it was contended that the statute prohibited anyone except members from recovering against the Association. The court said in the opinion:

"There is no provision in the statute that a policy issued by a mutual protective association shall be void if the assured does not sign the constitution. It is only by inference that it can be said that it even would be voidable. To allow either party to the policy to set up his own wrong as a defense to an obligation incurred under the policy, where the policy has been issued and held in good faith as an indemnity and where premiums have been paid and re-

682

ceived under it, is not only manifestly unjust, but contrary to settled rules of law."

The court then quotes from **Tone v Columbus, 39 Oh St, 281,** that:

"'Want of power in the corporation may be waived, or an estoppel may arise from failure to assert it at the proper time'."

If the defendant Association could avoid payment in this case under the claim that a mutual association, organized under the special statutes, has no power to place the "loss payable clause" rider on the policy to protect the mortgagee, it could avoid payment of any other policy whether there was a change of ownership or not. If it had no power to protect the mortgagee under the "loss payable clause" in this case, then it would not have that power in any other case. The claim is presented, we presume, as an argument to show that the relation between the insurer and the mortgagee cannot be contractual or give the mortgagee any interest in the insurance. This argument again fails to distinguish between the old form clause and the new standard form, which we find does create a contractual interest in the mortgagee in the policy, and we know of no law preventing a mutual company from obligating itself by attaching such a rider to the policy. In any event, as above stated, this is not made an issue by the pleadings.

Our conclusion is, that the transfer to the mortgagee of the equitable interest to it by the insured is not such a change of ownership as would work a forfeiture of plaintiff's right to recover under the policy in question.

The judgment of the Court of Common Pleas of Clinton County is reversed, and judgment is entered in this court in favor of the plaintiff in error, The Union Central Life Insurance Company.

ROSS, PJ, and MATTHEWS, J, concur.