THE SAVINGS SOCIETY COMMERCIAL BANK, APPELLANT, *v.*
MICHIGAN MUTUAL LIABILITY CO., APPELLEE.

(No. 600—Decided February 28, 1963.)

*Messrs. Cole & Cole*, for appellant.

*Messrs. Martin, Browne, Hull, Harper & Bridgman*, for
appellee.

CRAWFORD, J. Plaintiff, appellant, mortgagee of an
automobile insured by defendant, appellee, seeks to re-
cover in cash the sum of $1,860.90, the amount which the de-
fendant paid to repair damages to the automobile. The case
was tried to the court on an agreed stipulation of facts. Judg-
ment was entered for the defendant.

The two assignments of error are:

" (1) The trial court erred in holding that there was no
contract between defendant-appellee and plaintiff-appellant.

" (2) The trial court erred in finding that if an obligation

existed, it was fulfilled when defendant-appellee repaired the car, without notice to plaintiff-appellant.''

The agreed stipulation of facts is as follows:

''1. The plaintiff, The Savings Society Commercial Bank, is an Ohio corporation organized pursuant to the provisions of Chapter 1103 of the Ohio Revised Code; has principal place of business in Springfield, Clark County, Ohio.

''2. The defendant, Michigan Mutual Liability Company, is a Michigan corporation, an insurance company, and that it is authorized to do business in the state of Ohio.

''3. On February 10, 1958, plaintiff loaned to Margery Davis and William Davis, whose address then was 23½ West Clark Street, Springfield, Ohio, the sum of $3,169.92; said loan was evidenced by promissory note of even date therewith and secured by a chattel mortgage on a certain 1956 Cadillac 2-dr. hardtop 8-Cyl. automobile; serial No. 5662078130.

''That the said chattel mortgage was duly recorded as required by the statutes of the state of Ohio.

''4. As additional security for said loan, Margery Davis and William Davis secured and paid the premium on, and deposited with plaintiff, a certain policy of collision insurance issued by defendant, a copy of which is attached hereto and made a part hereof. That said policy named as the insured, William Davis and/or Margery Davis and that under Item 7 of said policy it is provided as follows:

'' 'Any loss under Part III is payable as interest may appear to the named insured and The Savings Society Commercial Bank, 9 East Main Street, Springfield, Ohio.'

''5. William Davis and Margery Davis made but one payment on said note, to-wit, on March 29, 1958, a payment in the sum of $66.04, and that as of that date the unpaid balance was $3,103.88. That the note, copy attached, provided an automatic acceleration of maturity in event of failure to pay any installment when due, or in event of a violation of any other provision of the said note and/or mortgage; and that by reason thereof the entire principal balance of the said note was due on or about April 10, 1958.

''6. The plaintiff, The Savings Society Commercial Bank, failed to notify defendant that the promissory note of William Davis and Margery Davis by virtue of a default of said Wil-

liam Davis and Margery Davis became due on or about April 20 [*sic*], 1958.

"7. On or about the 10th day of April, 1958, William Davis or Margery Davis, or both of them, removed the motor vehicle from the state of Ohio without the knowledge or consent of the plaintiff.

"8. On or about the 12th day of April, 1958, said motor vehicle was involved in a collision in the environs of Philadephia, Pennsylvania, which said collision was within the coverage provided by said insurance policy issued by the defendant.

"9. Subsequent and without notice to plaintiff, defendant paid the sum of $1,860.90 to repair said automobile to Taylor Auto Body Company, 1811 Master Street, Philadelphia, Pennsylvania.

"10. On or about the .... day of October, 1958, plaintiff recovered said motor vehicle in the state of Indiana; paid for the repairs on said automobile in the sum of $950.00 (this not being an issue in this cause other than to show the balance due on the original mortgage), ultimately sold said vehicle for the net sum of $1,000.00, and applied the proceeds thereof to the note of the said William Davis and Margery Davis.

"11. Plaintiff demanded that defendant pay to it the sum of $1,860.90 plus interest under the terms of the policy; defendant denied liability; and suit was filed in the Court of Common Pleas of Clark County, Ohio."

The copy of the policy attached to the stipulation appears not to be complete. However, from this partial copy, and from the whole record, with the opinion of the Common Pleas Court and the briefs in both courts, purporting to quote pertinent provisions thereof, apparently without challenge, we discover the following provisions:

(Declarations)

"Item 6. Name of Personal Accident Insured William Davis

"Item 7. Any loss under Part III is payable as interest may appear to the named insured and Savings Society Commercial Bank, 9 East Main St., Springfield, Ohio"

(Conditions)

"Item 10. The company may pay for the loss in money; or may repair or replace the damaged or stolen property * * *."

(Loss payable clause)

"Loss or damage, if any, as is covered by the policy, shall be payable as interest may appear to the lienholder named in Item 7 of the declarations, and this insurance as to the interest of the bailment lessor, conditional vendor or mortgagee or assignee of bailment lessor, conditional vendor or mortgagee (herein called the lienholder) shall not be invalidated by any act or neglect of the lessee, mortgagor or owner of the within described automobile nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by the lessee, mortgagor or purchaser in possession of the property insured under a bailment lease, conditional sale, mortgage or other encumbrance is not covered under such policy, unless specifically insured against and premium paid therefor; and provided, also, that in case the lessee, mortgagor or owner shall neglect to pay any premium due under such policy the lienholder shall, on demand, pay the same * * *.

"Provided also, that the lienholder shall notify the company of any change of ownership or increase of hazard which shall come to the knowledge of said lienholder and, unless permitted by such policy, it shall be noted thereon and the lienholder shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise such policy shall be null and void.

"The company reserves the right to cancel such policy at any time as provided by its terms, but in such case the company shall notify the lienholder when not less than ten days thereafter such cancellation shall be effective as to the interest of said lienholder therein and the company shall have the right, on like notice, to cancel this agreement.

"If the insured fails to render proof of loss within the time granted in the policy conditions, such lienholder shall do so within sixty days thereafter, in form and manner as provided by the policy, and, further, shall be subject to the provisions of the policy relating to appraisal and time of payment and of bringing suit.

"Whenever the company shall pay the lienholder any sum for loss or damage under such policy and shall claim that, as to the lessee, mortgagor or owner, no liability therefor existed,

the company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may at its option, pay to the lienholder the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the lienholder to recover the full amount of its claim.

"Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of such policy, other than as above stated."

The mutual promises contained in the provisions of this policy clearly constitute a contract between the plaintiff bank and the defendant insurance company.

These provisions include a "union" or "standard" mortgage clause. Such a clause is generally recognized as creating a contractual relationship between the mortgagee and the insurer.

"Policies issued at the present time protecting the interest of a mortgagee usually contain what is known as the 'union' or 'standard' mortgage clause by which it is stipulated, in addition to the simple loss-payable clause, that in case the loss is directed to be payable to a mortgagee, the interest of the mortgagee in the proceeds of the policy shall not be invalidated by the act or neglect of the mortgagor or owner of the insured property. Under such clause there exists a contractual relation between the mortgagee and insurer. * * *" 30 Ohio Jurisprudence (2d), 795, Insurance, Section 869.

See, also, *State, ex rel. Squire, Supt.,* v. *Royal Ins. Co.* (1938), 58 Ohio App., 199; *Farmers National Bank* v. *Delaware Ins. Co.* (1911), 83 Ohio St., 309; *Central Trust & Safe Deposit Co.* v. *Dubuque Fire & Marine Ins. Co.* (1913), 1 Ohio App., 447; *Ohio Farmers Ins. Co.* v. *Hull* (1932), 45 Ohio App., 166, 169; *Union Central Life Ins. Co.* v. *Clinton Mutual Ins. Assn.* (1935), 51 Ohio App., 20, 30.

Defendant cites to the contrary *Erie Brewing Co.* v. *Ohio Farmers Ins. Co.* (1909), 81 Ohio St., 1. The policy there provided that the owner-mortgagor and not the mortgagee should participate in arbitration to determine the amount of liability.

Hence, the case decided that under the wording of that particular policy "the mortgagee was not a party to and had no notice of the appraisement and award," and that the policy was not assigned to him. The court nevertheless recognized the existence of his rights therein.

*Herrick* v. *City of New York City Ins. Co.* (1935), 50 Ohio App., 355, was also cited by defendant. In the course of that opinion, although not in the syllabus, the court stated that under a standard or union mortgage clause the mortgagee is not insured and sustains no contractual relationship with the insurance company independent of the mortgagor's contract and is simply an appointee to receive the amount due, if any. The court proceeded, however, to distinguish the cases cited by the present plaintiff upon the difference of language in the various policies.

As stated at the outset, in the present case we determine the existence of a contractual relationship between the mortgagee and the insurance company, first of all upon the language of the policy itself.

Furthermore, at the time of the collision the plaintiff, mortgagee, was, as it now contends, the real party in interest in the policy.

"Where a fire insurance policy contains a standard mortgage clause in favor of the mortgagee, and a loss occurs at a time when the mortgage is overdue and in default, the loss being less than the amount of the mortgage, the mortgagee is the real party in interest and entitled to the proceeds * * *." *State, ex rel. Squire, Supt.,* v. *Royal Ins. Co., supra.* (It should be noted that the provisions for the option in that case differed from those now before us; hence, the remainder of the syllabus is not quoted, being inapplicable.)

"Where mortgage debt equals or exceeds fire loss covered by policy containing standard mortgage clause, mortgagee is 'real party in interest' and proper person to bring suit on policy." *Ohio Farmers Ins. Co.* v. *Hull, supra.*

In this policy, the insurer is given the right of an option to repair or restore the property. Such a right was upheld in the case cited by the defendant, *Michigan Fire Repair Contractors' Assn.* v. *Pacific National Fire Ins. Co.* (1962), 362 Mich., 552, 107 N. W. (2d), 811.

"* * * most policies contain provisions which give the insurer the option to restore the property in case of loss. And the right of a mortgagee to recover money damages under a standard mortgage clause has been held subject to the reserved option of the insurer to rebuild destroyed property." 6 Appleman, Insurance Law and Practice, 442, Section 4001.

The most difficult question in our present case centers about the method followed by the defendant insurer in exercising its option to repair, and is whether in doing so it failed to give to the plaintiff any notice it may have been legally required to give.

It is well settled that clear and unequivocal notice of the exercise of the option must be given, and that this may be done by act or word. Failure to give proper notice waives the right to elect.

"The election of an insurer to rebuild or repair must be a clear, decisive act, manifesting a deliberate choice. And sending workmen, leaving materials and starting work is such a decisive act * * *

"* * *

"A failure of the insurer to give proper notice of its election to restore the property constitutes a waiver of such right." 6 Appleman, Insurance Law and Practice, 446, 448, Section 4003.

The notice must be given whether or not the policy fixes a time within which the option may be exercised, and whether or not it expressly states that a notice must be given. See *Lincoln* v. *General Casualty Co. of Wisconsin* (1952), 243 Iowa, 1280, 55 N. W. (2d), 321; *Home Mutual Ins. Co* v. *Stewart* (1940), 105 Colo., 516, 100 P. (2d), 159 (1940); *Dosland* v. *Preferred Risk Mutual Ins. Co.* (1951), 242 Iowa, 1220, 49 N. W. (2d), 823; 29 (Original Volume) American Jurisprudence, 945, Insurance, Section 1267; 46 Corpus Juris Secundum, 131, Insurance, Section 1195.

To whom the notice must be given is not entirely clear. In most of the cases we have found, the time and manner of giving the notice are discussed, but the decisions turn upon whether proper notice was timely given to the named insured, who is ordinarily the mortgagor.

In 46 Corpus Juris Secundum, 131, Insurance, Section 1195, the usual statement is made:

"Insurer must give notice of its election to exercise its option and must exercise the option in accordance with the terms of the policy. It must by some unequivocal act indicate its intention to avail itself of the provisions of the policy in this respect and offer to replace with property of the same kind and quality as that destroyed. * * *''

The author adds a footnote to the effect that the notice should be given to the mortgagor and not to the mortgagee. The one case cited in support is *Heilmann* v. *Westchester Fire Ins. Co.* (1878), 75 N. Y., 7. In that case the plaintiff-mortgagor brought action against the insurer for breach of its contract to rebuild or repair the damaged premises, after the latter had given notice to the plaintiff of the exercise of its option to do so. The defendant sought to avoid liability by raising the technical question whether plaintiff was the proper party to bring the action, contending that the mortgagee and not the mortgagor should have brought it. The mortgagee was not a party and made no objection to the proceedings. Hence, that early case is of doubtful significance here.

Plaintiff argues that inasmuch as it has a contractual relationship with the insurance company and is the real party in interest, the insurance company is bound to notify it of the exercise of the option. Such would be a reasonable requirement if specifically provided in the contract, which it is not.

The insurance company points out that plaintiff neglected to notify it of the mortgagor's default and the fact that the entire balance of the mortgage had become due; a provision for such a notice also could reasonably have been included in the contract, but is not. Defendant also argues that the money it expended for repairs restored plaintiff's security. However, this could hardly be a defense for failure to perform a contractual duty, if one existed.

The determinative question is whether the insurance company effectively exercised its option under the contract. Its act of repairing was the exercise and apparently the only notice of exercise of the option. It performed its contractual duty under that option. Neither a notice nor the fact of what the insurer was doing was brought home to the plaintiff. Did the defendant owe a duty to see that this was accomplished?

It is unfortunate that it did not do so. The location of the insured automobile in another state, the extent of the repairs (nearly two-thirds the amount of the indebtedness to the plaintiff), were suspicious circumstances, which should perhaps have prompted some communication with the plaintiff. But such a requirement is not contained in the contract, and we find no precedent or other legal basis for implying such a provision.

The judgment will be affirmed.

*Judgment affirmed.*

KERNS, P. J., and SHERER, J., concur.