PITTSBURGH NATIONAL BANK, Appellee,

v.

MOTORISTS MUTUAL INSURANCE COMPANY, Appellant, et al.

[Cite as *Pittsburgh Natl. Bank v. Motorists Mut. Ins. Co.* (1993), 87 Ohio App.3d 82.]

Court of Appeals of Ohio,
Summit County.

No. 15766.

Decided April 7, 1993.

*Bruce R. Freedman,* for appellee.

*Orville L. Reed III,* for appellant.

---

QUILLIN, Presiding Judge.

The question presented in this appeal is whether a loss payable clause contained in an automobile insurance policy requires payment to the mortgagee where the insured has intentionally destroyed the car. We affirm the trial court's decision, and hold that appellee Pittsburgh National Bank, ("Pittsburgh") the mortgagee, was entitled to payment under the policy.

Robert Peterson purchased a Chevrolet Blazer and executed a security agreement with Pittsburgh. The agreement listed the Blazer as collateral and required Peterson to maintain insurance upon it. Peterson eventually defaulted on the car loan, but before Pittsburgh could repossess the car, Peterson intentionally destroyed it by setting it on fire.

Pittsburgh sought payment from Motorists Mutual Insurance Company ("Motorists"), appellant, under the loss payable clause of Peterson's automobile insurance policy. That clause provides in pertinent part:

"LOSS PAYABLE CLAUSE. Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee [mortgagee] shown in the Declarations. This insurance covering the interest of the loss payee shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of your covered auto. * * *"

When Motorists denied payment under the clause, Pittsburgh brought this action. Motorists moved for summary judgment and Pittsburgh filed a cross-motion for summary judgment, which the trial court granted. Motorists appeals and raises one assignment of error:

### Assignment of Error

"The trial court committed prejudicial error in granting the bank's summary judgment motion and denying Motorists' summary judgment motion because there was no coverage as a matter of law for the insured's intentional destruction of his own car."

It is Motorists' position that Pittsburgh is precluded from recovery under the policy's loss payable clause. Specifically, Motorists contends that the clause does not provide coverage to the mortgagee for the insured's intentional destruction of his car, because such a loss falls outside the scope of the policy's coverage.

To resolve this issue, we must first determine the type of loss payable clause which is contained in the policy. There are generally two types of loss payable clauses found in insurance contracts. The first, the simple mortgage clause, typically states that the proceeds of the policy shall be paid first to the mortgagee as his interest may appear. 10A Couch on Insurance 2d (Rev.Ed. 1982) 724, Section 42:682. Under such a clause, the mortgagee is simply an appointee of the insured, and its right of recovery is only as great as that of the insured. See *Union Cent. Life Ins. Co. v. Clinton Mut. Ins. Assn.* (1935), 51 Ohio App. 20, 26, 3 O.O. 202, 204, 199 N.E. 223, 226; see, also, Couch, *supra*, at 738–740, Sections 42:702 and 42:705. Notably, under a simple mortgage clause, anything that would void the policy in the hands of the mortgagor likewise voids it as to the mortgagee. *Union Cent., supra*, at 26, 3 O.O. at 204, 199 N.E. at 226; Couch at 744, Section 42:706.

The protection provided the mortgagee under the second type of loss payable clause, the standard mortgage clause, is broader. Such a clause states, in effect, that coverage for the mortgagee will not be invalidated by any act or neglect of the insured. Generally, this type of clause is considered to constitute a separate contract between the insurer and the mortgagee. See *Union Cent., supra*, 51 Ohio App. at 26, 3 O.O. at 204, 199 N.E. at 226; but, see, *Herrick v. City of N.Y. Ins. Co.* (1935), 50 Ohio App. 355, 364, 198 N.E. 280, 285.

Thus, the policy constitutes two separate contracts of indemnity which relate to the same subject matter, but cover distinct interests therein, and it effects a new and independent insurance which cannot be destroyed or impaired by the mortgagor's acts or by those of any person other than the mortgagee or someone authorized to act for him and in his behalf. Couch, *supra*, at 724, 763–764, Sections 42:682 and 42:728.

The difference between the simple loss payable and the standard mortgage clause, therefore, has been described as follows:

" * * * In the union, standard, or New York forms, the mortgagee may become liable to pay the premium to the insurer—in return, it is freed from policy defenses which the company may have against the mortgagor. In the open [simple] form, the mortgagee stands in the mortgagor's shoes, and is usually considered subject to the same defenses." 5A Appleman, Insurance Law and Practice (1970) 282, Section 3401.

Because the loss payable clause in the instant case provides, in essence, that coverage to the mortgagee will not be invalidated by the fraudulent acts or omissions of the insured, other than the insured's conversion, embezzlement or secretion of the vehicle, it constitutes a standard mortgage clause, and serves as a separate contract between Pittsburgh and Motorists. See *Sav. Soc. Commercial*

*Bank v. Michigan Mut. Liab. Co.* (1963), 118 Ohio App. 297, 25 O.O.2d 143, 194 N.E.2d 435. The issue which arises, then, is whether a mortgagee under a standard mortgage clause is subject to the coverage limitations of the remainder of the policy.

Ohio case law interpreting standard mortgage clauses is somewhat scarce, and generally fails to address the specific relationship between a standard mortgage clause and the policy's coverage limits. The Ohio Supreme Court has considered the relationship between the policy and the standard mortgage clause to a certain extent, however, in *Erie Brewing Co. v. Ohio Farmers' Ins. Co.* (1909), 81 Ohio St. 1, 89 N.E. 1065. That case involved a standard mortgage clause which provided that insurance to the mortgagee would not be invalidated by any act or neglect of the mortgagor or owner. In determining that the mortgagee was subject to an appraisal of damages obtained by the insurance company and the insured, the court stated:

" * * * [T]he principle contract must be observed, except as expressly modified, and * * * the rights of the mortgagee depend upon and must be worked out through the relation the insured sustains to the insurance company, that relation being one of solemn primary contract." *Id.* at 21–22, 89 N.E. at 1068.

The correlation between the mortgage clause and the policy has been considered in greater detail by various jurisdictions across the country. The majority position on the specific coverage issue presented here appears to be that where an action of the insured causes the loss to fall outside the policy coverage limitations, the mortgagee is still entitled to recover.

In *Don Chapman Motor Sales, Inc. v. Natl. Sav. Ins. Co.* (Tex.App.1981), 626 S.W.2d 592, 596–597, the insurance policy at issue contained an exclusion from coverage for the operation of the automobile by an individual under sixteen. The policy also contained a loss payable clause stating that no act of the insured would invalidate the mortgagee's right to recover. When the vehicle was damaged while being driven by an unlicensed driver, the court held the mortgagee was entitled to payment for that loss because it was caused by the insured's act of allowing an unlicensed operator to drive the automobile.

A similar result was reached in *Am. Natl. Bank & Trust Co. v. Young* (Minn.1983), 329 N.W.2d 805, which held that although drug trafficking fell within an exclusion from coverage under an airplane insurance policy, the mortgagee was nevertheless entitled to recover for the loss of the plane during the insured's drug trafficking. The court reasoned that "under the bank's separate policy, the actions of [the insured] were the very thing for which the bank's insurance was purchased—to protect it against loss caused by a violation of the terms of the policy by the mortgagor." *Id.* at 811. See, also, *Foremost Ins. Co. v. Allstate*

*Ins. Co.* (1992), 439 Mich. 378, 486 N.W.2d 600; *Gibraltar Financial Corp. v. Lumbermens Mut. Cas. Co.* (1987), 400 Mass. 870, 513 N.E.2d 681.

The minority position on this issue views the standard mortgage clause as subject to the coverage limits of the policy. Thus, recovery by the mortgagee is precluded, under this approach, where the loss falls outside the policy's coverage.

In *Gen. Motors Acceptance Corp. v. W. Fire Ins. Co.* (Mo.App.1970), 457 S.W.2d 234, the policy at issue specifically excluded from coverage any loss caused while the vehicle was being driven by a particular individual. When the vehicle was damaged by that individual, the court held that the mortgagee was precluded from recovery because the loss was outside the scope of the policy's coverage. The court emphasized that a mortgage clause is not an entirely disconnected contract but is to be rendered certain by reference to the policy itself. *Id.* at 236–237. See, also, *W. Leasing, Inc. v. Occidental Fire & Cas. Co. of North Carolina* (1974), 268 Ore. 426, 521 P.2d 352, 354 (holding that the addition of a standard loss payable clause does not entitle the mortgagee to payment for losses arising from risks not covered by the policy); *Charter Bank of Boonville v. Shelter Gen. Ins.* (Mo.App.1984), 664 S.W.2d 44.

We believe the better-reasoned approach to this issue is that followed by the majority of the courts. We hold, therefore, that where the actions of the insured would render the loss beyond the scope of the policy coverage, the mortgagee is not precluded from coverage, absent such a limitation in the loss payable clause. Thus, under the loss payable clause in the instant case, the mortgagee is not precluded from recovery simply because the act of the insured places the loss outside the scope of the policy's coverage.

The question which we must next determine is whether the specific terms of the loss payable clause at issue here preclude recovery for the mortgagee where the insured destroys the vehicle. Although the clause provides that the fraudulent acts of the insured will not invalidate coverage, it contains exclusions from coverage for the insured's embezzlement, secretion or conversion of the automobile. Motorists argues that the intentional burning of the insured's car constitutes a "conversion" under the loss payable clause.

Several courts have struggled with the appropriate meaning of this phrase in cases very similar to the instant one. At least two courts have taken the approach urged by Motorists, and have held that the intentional burning of an automobile constitutes a conversion under the terms of the loss payable clause. In *Commerce Union Bank v. Midland Natl. Ins. Co.* (1963), 43 Ill.App.2d 332, 193 N.E.2d 230, a policy insuring a tractor included a loss payable clause which contained an exception from coverage for the insured's conversion of the vehicle.

In holding that the intentional destruction of the tractor constituted a conversion, the court stated:

" * * * It is difficult to conclude that either a complete consumption of an article if it is consumable, or its intentional destruction, would be covered by a policy which excluded liability for 'conversion.' * * * " *Id.* at 334, 193 N.E.2d at 232.

Similarly, the court in *Progressive Am. Ins. Co. v. Florida Bank at Daytona Beach* (Fla.App. 5th Dist.1984), 452 So.2d 42, held that where the insured was involved in the theft of his own car, that loss was excluded from the loss payable clause under the exclusion for conversion of the auto by the insured.

Other courts, however, have taken the opposite view. In *Foremost Ins. Co., supra,* the Michigan Supreme Court concluded that it is never possible for an individual to convert his own property. Consequently, that court determined that the intentional burning of the insured's automobile did not constitute a conversion under the exclusion in the loss payable clause. See, also, *Gibraltar Fin. Corp., supra.*

■ While we are not convinced that the intentional burning of the insured's automobile falls within the exclusion for conversion, unlike the *Foremost* court we are not prepared to state that an insured can never convert his own property. Such a construction would render meaningless the provision containing the exclusion for conversion. See *Farmers Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 337, 94 N.E. 834, 839; *Gibbons–Grable v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 175, 517 N.E.2d 559, 563.

■ Rather, we believe the use of the term "conversion," in the loss payable clause to be ambiguous, as it is unclear what types of activity that term was meant to include. It is well settled that where an insurance policy contains an ambiguity, the insured is entitled to a liberal construction of that term in his favor. *Blohm v. Cincinnati Ins. Co.* (1988), 39 Ohio St.3d 63, 66, 529 N.E.2d 433, 435. Therefore, construing the exclusion for conversion liberally in favor of the mortgagee, we hold that the exclusion does not include the intentional burning of the automobile by the insured. The assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of the Ninth District Court of Appeals, sitting by assignment.