[Cite as *Barwick v. State Farm Fire & Cas. Ins. Co.*, 2011-Ohio-5689.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

JUAN BARWICK, et al.  :

    Plaintiffs-Appellants  :        C.A. CASE NO.   24526

v.  :        T.C. NO.   10CV2148

STATE FARM FIRE & CASUALTY  :        (Civil appeal from
INSURANCE COMPANY, et al.  :         Common Pleas Court)

    Defendants-Appellees  :

:

. . . . . . . . . .

**O P I N I O N**

Rendered on the   4th   day of    November   , 2011.

. . . . . . . . . .

JOHN M. EBERSOLE, Atty. Reg. No. 0072234, 202 E. Central Avenue, Miamisburg, Ohio 45342
     Attorney for Plaintiffs-Appellants

BENJAMIN D. CARNAHAN, Atty. Reg. No. 0079737 and THOMAS A. BARNI, Atty. Reg. No. 0064555, 5910 Landerbrook Drive, Suite 200, Cleveland, Ohio 44124
     Attorneys for Defendants-Appellees, The Bank of New York Mellon, as Trustee, and Ocwen Loan Servicing, LLC

STEVEN O. DEAN, Atty. Reg. No. 0009095, 130 W. Second Street, Suite 1500, Dayton, Ohio 45402
     Attorney for Defendant-Appellee State Farm Fire & Casualty Insurance Company

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Juan and Margaret Barwick, filed March 10, 2011. The Barwicks appeal from the trial court's grant of summary judgment in favor of Bank of New York Mellon as Trustee on behalf of the Registered Certificate Holders of GSAMP Trust 2004-SEA2, Mortgage Pass-Through Certificates, Series 2001-SEA2 ("BONY"), and OCWEN Loan Servicing, LLC ("OCWEN"), and the grant to BONY of insurance proceeds paid after a fire loss to the Barwicks' home.

{¶ 2} The events giving rise to this matter began when the Barwicks executed a promissory note for $90,000.00, secured by a mortgage on real property located at 400 Richmond Avenue, in Dayton. BONY became the successor trustee of the mortgage loan, and OCWEN serviced the loan. In February, 2006, a foreclosure action was initiated against the Barwicks, and on May 18, 2006, the trial court issued an order granting judgment on the pleadings, in which it determined that the Barwicks owed $90,000.00, plus interest at the rate of 10.5 per cent per annum, from August 27, 2005 (Case No. 2006 CV 1345). In August, 2006, a fire substantially damaged the Barwicks' property, and pursuant to an insurance policy with State Farm Fire & Casualty Company ("State Farm"), in late 2006, a check was issued to the Barwicks, made payable to them and OCWEN in the amount of $87,387.06.

{¶ 3} The real property was subsequently sold at sheriff's sale. The sale was confirmed on November 13, 2006, and the entry confirming the sale provides that the property sold for $41,385.00. BONY was the successful bidder at the sale, and its actual

receipt from the sale, after payment of fees and costs, was $37,837.72.

{¶ 4}   On March 11, 2010, the Barwicks filed a Complaint against State Farm and JPMorgan Chase Bank, as Trustee on Behalf of the Registered Certificateholders of GSAMP Trust 2004-SEA2, Mortgage Passthrough Certificates, Series 2004-SEA2, herein after, BONY (as successor trustee).   The Barwicks asserted that State Farm owed payment to them under the policy and that BONY is named as a defendant due to State Farm's claim that BONY has an interest in the insurance proceeds.

{¶ 5}   On May 12, 2010, the trial court sustained State Farm's motion for joinder of OCWEN as a defendant. On the same date, State Farm filed an Answer to the Complaint and a Counterclaim and Cross-Claim against OCWEN for interpleader.   A copy of the insurance policy at issue is attached to State Farm's Answer, Counterclaim and Cross-Claim, and OCWEN is listed on the declarations page as "Mortgagee."   Finally, on the same date, State Farm moved the court for an order permitting it to interplead $87,387.06 and be dismissed from the matter.   According to State Farm, that sum is due and owing under the policy, and the Barwicks, as named insureds, and OCWEN, as mortgagee, may claim rights to the proceeds.   State Farm sought an order, pursuant to Civ.R. 22, allowing it to deposit the funds due with the clerk of courts and be dismissed.

{¶ 6}   On June 21, 2010, the trial court issued an Entry sustaining State Farm's motion for interpleader and dismissing State Farm.

{¶ 7}   On August 27, 2010, BONY and OCWEN filed their Motion for Summary Judgment.   According to them, the Barwicks' mortgage required them to maintain insurance on the property against hazard losses, and the Barwicks contracted with State Farm to insure

the property. BONY and OCWEN argued that the State Farm policy included a standard mortgage clause and identified OCWEN as mortgagee. BONY and OCWEN asserted that the Barwicks received the insurance check after the foreclosure judgment against the Barwicks had been entered but before the sheriff's sale, that a deficiency remained, and that the Barwicks' debt was accordingly not extinguished. BONY did not pursue a deficiency judgment against the Barwicks. BONY and OCWEN assert that the Barwicks did not provide the check State Farm mailed to them in 2006 to OCWEN, "but rather, intentionally waited several years until they could not be liable for a deficiency judgment to ask this Court to require State Farm to provide the proceeds to Plaintiffs alone." Since the mortgage debt exceeded the fire loss that the policy covered, BONY and OCWEN argued that OCWEN, as mortgagee, is the real party in interest entitled to the insurance proceeds as a matter of law. Further, BONY and OCWEN asserted that the rights of a mortgagee accrue at the time of loss, namely at the time of the fire herein.

{¶ 8}   On September 7, 2010, the Barwicks filed a Motion for Summary Judgment, asserting that they are entitled to the full amount of the insurance proceeds, and that   BONY and OCWEN have no enforceable right thereto. The Barwicks asserted that they had a right to discharge the mortgage after the default until the sheriff's sale was confirmed. According to the Barwicks, the insurance contract contained a simple, as opposed to a standard, mortgage clause, such that the mortgagee is merely an appointee to receive payment, and there is no contractual obligation between the mortgagee and the insurance company. The Barwicks contended that the mortgagee's rights accrued when the fire occurred, but that those rights were extinguished by the actions of the parties subsequent to the loss. According

to the Barwicks, the mortgagee's rights were partially extinguished when the property was purchased at the sheriff's sale for $41,385.00, and were fully extinguished when the Barwicks received an IRS Form 1099, "demonstrating income to the Plaintiffs to write off the deficiency." According to the Barwicks, the statutory period to a pursue a deficiency judgment expired in 2008, pursuant to R.C. 2329.08.

{¶ 9}  On December 6, 2010, the court issued an Entry of Dismissal, dismissing State Farm with prejudice.

{¶ 10} On February 8, 2011, the trial court issued a Decision, Order, and Entry overruling the Barwicks' Motion for Summary Judgment and sustaining the Motion for Summary Judgment of BONY and OCWEN.  The trial court quoted the following language from the mortgage that required the Barwicks to "procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender * * *.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person."  The court further indicated that the Barwicks complied with this requirement, and it noted that the State Farm policy procured by them provides, in part, "If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear.  If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages."

{¶ 11} The court determined that, "[p]ursuant to applicable Ohio law, 'where a

mortgage debt equals or exceeds fire loss covered by policy containing standard mortgage clause, mortgagee is "real party in interest." (Citation omitted).'" The court noted that the total mortgage debt herein exceeded the fire loss covered by the policy, since at the time of the fire the mortgage debt was $90,000.00 plus interest, as reflected in the May, 2006 foreclosure judgment, and the insurance proceeds were $87,386.06. Accordingly, the court concluded that BONY "has an interest in the insurance proceeds as a real party in interest." The court further determined that when BONY bought the property at sheriff's sale, "it extinguished its interest in the insurance proceeds in the amount it received in payment on the underlying debt secured by the property." After BONY received $37,837.72 for the property, as discussed above, there remained the sum of $52,162.28 owed to BONY by the Barwicks on the underlying debt. According to the trial court, that sum "represents the extent of BONY's interest in the insurance proceeds," plus interest at 10.5% from August 27, 2005 to present, "or the sum of $92,697.93."

{¶ 12} The Barwicks assert two assignments of error, which we will consider together. They are as follows:

{¶ 13} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE DEFENDANT/APPELLEE WAS THE 'REAL PARTY IN INTEREST' TO THE SUBJECT INSURANCE PROCEEDS WHERE THE INSURANCE CONTRACT CONTAINED A 'SIMPLE' INSURANCE CLAUSE." And,

{¶ 14} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE DEFENDANT/APPELLEE WAS ENTITLED TO A PORTION OF THE SUBJECT INSURANCE PROCEEDS, DESPITE THE FACT THAT THE MORTGAGE DEBT WAS

EXTINGUISHED BY A COMBINATION OF THE ACTIONS OF THE DEFENDANT AND BY OPERATION OF LAW."

{¶ 15} "Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. (Internal citations omitted). Our review of the trial court's decision to grant summary judgment is de novo." *Cohen v. G/C Contracting Corp.,* Greene App. No. 2006 CA 102, 2007-Ohio-4888, ¶ 20.

{¶ 16} According to the Barwicks, the trial court's finding that BONY is the real party in interest is based upon "a non-existent contractual relationship" between BONY and State Farm. The Barwicks assert that the policy contained a simple mortgage clause, and not a standard mortgage clause, and BONY is accordingly "a mere appointee to the proceeds" and not the real party in interest. According to the Barwicks, "had the insurance contract contained the standard mortgage clause, BONY would be the real party in interest because of the contractual obligation from the insurance company to the mortgagee."

{¶ 17} BONY and OCWEN assert that the clause at issue is a standard clause. They assert that their rights were determined at the time of loss, "which was undisputably prior to the sheriff's sale * * * and before any deficiency judgment against the Appellants had been entered." They further maintain that the distinction between a simple and standard mortgage clause herein is "not determinative," because under either a simple clause or a

standard clause, BONY and OCWEN are entitled to share in the proceeds. BONY and OCWEN point out that the Barwicks' argument that the policy contains a simple mortgage clause means that the Barwicks are necessarily arguing that they breached the clear terms of their mortgage contract, which required a standard clause, but that they are nevertheless entitled to a windfall.

{¶ 18} We begin by addressing the parties' assertions regarding the distinction between a standard and a simple mortgage clause. In *Savings Society Commercial Bank v. Michigan Mut. Liab. Co.* (1963), 118 Ohio App. 297, 301, this Court noted that in a standard clause, "'it is stipulated, in addition to the simple losspayable clause, that in case the loss is directed to be payable to a mortgagee, the interest of the mortgagee in the proceeds of the policy shall not be invalidated by the act or neglect of the mortgagor or owner of the insured property. Under such clause there exists a contractual relation between the mortgagee and insurer. * * *' (Citation omitted)." A simple mortgage clause, in contrast, "typically states that the proceeds of the policy shall be paid first to the mortgagee as his interest may appear. 10A Couch on Insurance 2d (Rev. Ed. 1982) 724, Section 42:682. Under such a clause, the mortgagee is simply an appointee of the insured, and its right of recovery is only as great as that of the insured. (Citations omitted). Notably, under a simple mortgage clause, anything that would void the policy in the hands of the mortgagor likewise voids it as to the mortgagee. (Citations omitted)." *Pittsburgh Natl. Bank v. Motorists Mut. Ins. Co.* (1993), 87 Ohio App.3d 82, 85. "The phrase 'as interests appear' is commonly used in insurance contracts to mean 'that the insurer will pay the mortgagee to the extent to which his mortgage is a lien or charge on the premises.' (Citation omitted)." *Waterfield Mortgage v.*

*Buckeye State Mut. Ins. Co.*(Sept. 30, 1994), Miami App. No. 93-CA-53.

{¶ 19} "The difference between the simple loss payable and the standard mortgage clause, therefore, has been described as follows:

{¶ 20} "' * * * In [the standard clause], the mortgagee may become liable to pay the premium to the insurer - in return it is freed from policy defenses which the company may have against the mortgagor.   In the * * * [simple] form, the mortgagee stands in

{¶ 21} the mortgagor's shoes, and is usually considered subject to the same defenses.'   5A Appleman, Insurance Law and Practice (1970), 282,Section 3401." *Pittsburgh Natl. Bank,* at 85.

{¶ 22} As this Court noted in *Waterfield*, the "factual situations which exist in the cases developing the distinction between standard and simple mortgage clauses * * * involve insureds who have suffered a loss but are barred from recovery under the insurance policies because they have fraudulently caused the loss.   The most common fact pattern is that of an insured setting fire to his own property to attempt to recover insurance proceeds.   See *Pittsburgh*, *supra*.   The issue before the court in those cases was whether the mortgagee had a right to payment under the insurance contract even though the insured did not.   In these situations, the insurance company has not breached the contract, but the insured has caused the contract to become void."

{¶ 23} The mortgage clause at issue herein, provides:

{¶ 24} "10.   **Mortgage Clause**.   The word 'mortgagee' includes trustee.

{¶ 25} "a.   If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear.   If more than one mortgagee is

named, the order of payment shall be the same as the order of precedence of the mortgages.

**{¶ 26}** "b.   If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

**{¶ 27}** "(1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**{¶ 28}** "(2) pays on demand any premium due under this policy, if you have not paid the premium,

**{¶ 29}** "(3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. * * *

**{¶ 30}** "(c) If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. * * * ."

**{¶ 31}** While the clause herein does not contain language stating that the interests of the mortgagee shall not be invalidated by any act or neglect of the mortgagor, the "policy contains other hallmarks of a standard mortgage clause, including [BONY's] obligation to pay premiums.   Further, in cases of doubt, a clause providing for payment of proceeds to a mortgagee is construed as a standard mortgage clause.   4 Couch on Insurance § 65:10 (3rd Ed. 2006)." *Westhaven Group, LLC v. Auto-Owners Ins. Co.* (Sept. 22, 2006), N.D. Ohio No. 3:05 CV 7350,   citing *Nationwide v. Hunt* (1997), 488 S.E.2d 339, 343 ("one of the distinguishing features of standard clauses is that they require the mortgagee to pay premiums on the policy if the insured fails to do so.   Such clearly is the case here: 'denial [of insured's claim] will not apply to a valid claim of the mortgagee, if the mortgagee * * * pays any premium due under this policy on demand if [insured] has neglected to pay the

premium * * * .'")

{¶ 32} We agree with the trial court that the Barwicks complied with the requirement in their mortgage to procure fire insurance with a standard mortgage clause. We further agree with BONY and OCWEN that the nature of the clause herein is not determinative of their rights, since nothing occurred to void the policy in the hands of the Barwicks. As the trial court found, BONY, as mortgagee, was vested with rights in any insurance proceeds due to the operation of the mortgage and the State Farm policy.

{¶ 33} The Barwicks assert that BONY's rights accrued at the time of the loss, but they further assert that BONY's rights to the proceeds changed subsequent to the fire, in reliance upon *Lee v. Royal Indemnity Co.* (1997), 108 F.3d 651, and *Benton Banking Co. v. Tennessee Farmers Mutual Ins. Co.* (1995), 906 S.W. 2d 436. According to the Barwicks, BONY's interest in the insurance proceeds was "partially extinguished" when it bought the property, and "fully extinguished when they issued an IRS form 1099 to the insured, demonstrating income to the Plaintiffs to write off the deficiency."

{¶ 34} In *Lee*, the mortgagee paid off the entire mortgage at a foreclosure sale after a fire, and the insured homeowner sued its insurer on the policy. A jury returned a verdict in favor of the homeowner, and the mortgagee moved to set off the amount of the extinguished mortgage against the judgment. The Sixth Circuit determined that the mortgagee no longer had any interest under the insurance policy.

{¶ 35} In *Benton Banking Co.*, the bank accepted a promissory note signed by the insured homeowner's father in satisfaction of the mortgage following a fire, and the Tennessee Supreme Court held that the bank had lost its interest under the insurance policy

when it accepted the note in satisfaction of the debt.

{¶ 36} "* * * [W]here a fire loss occurs and a loss payable mortgagee is thus vested with rights under an insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss payable mortgagee's interest in the insurance proceeds to the extent that the debt has been satisfied. (citations omitted)." *Benton Banking Co.,* at 438. The *Lee* court, in reliance upon *Benton Banking Co.*, noted that extinguishment of the debt, whether before or after the fire, "'precludes to the extent thereof, any recovery by the loss-payable mortgagee for the plain and sole reason that the debt, itself, has been to that extent extinguished.'" *Lee*, at 654, quoting *Benton Banking Co.*, at 439. "'The mortgagee's interest in the insurance proceeds is recognized as security for the payment of the debt. The insurance is an alternative source of payment and once the debt is paid by some other means, any right to the insurance is thereby extinguished. Equity requires that subsequent events, such as payment of the underlying debt, not be ignored when the court distributes the insurance proceeds.'" Id.

{¶ 37} We note that the trial court correctly relied upon *Benton Banking Co.* in determining that BONY's interest in the insurance proceeds was extinguished to the extent of the payment it received in partial satisfaction of the debt. Here, BONY bought the property at the sheriff's sale, and BONY's interest in the insurance proceeds was extinguished to the extent of the payment that BONY received, namely $37,837.72. As the trial court determined, the sum of $52,162.28 remained due to BONY and represented the extent of BONY's interest. Accordingly, BONY, as the real party in interest, was entitled to the deficiency remaining after the sale, $52,162.28, plus interest as ordered by the court in

the foreclosure action.

**{¶ 38}** As to the Barwicks' arguments regarding the alleged extinguishment of the remaining debt via the issuance of an IRS Form 1099, as BONY and OCWEN assert, that document is not in the record before us, and as the trial court noted, the Barwicks have not submitted any authority, nor has research produced any, for the proposition that the issuance of the form extinguishes the mortgagee's remaining interest in the insurance proceeds.

**{¶ 39}** Finally, the Barwicks assert that OCWEN's failure to obtain a deficiency judgment extinguished its interest in the insurance proceeds as a matter of law, and they direct our attention to *Rushing v. Dairyland Ins. Co.*(1984), 456 So.2d 599, and *Sportsmen's Park, Inc. v. New York Property Ins. Underwriting Assoc.* (1983), 97 A.D.2d 893, 470 N.Y.S.2d 456. In *Rushing*, the Supreme Court of Louisiana determined that a mortgagee under a simple loss payee clause who foreclosed without benefit of appraisal lost the right to the insurance proceeds by virtue of the extinguishment of the mortgage debt under the Louisiana Deficiency Judgment Act ("LDJA"). The property at issue in *Rushing* was a truck, and the LDJA provided, "'If a mortgagee * * * takes advantage of a waiver of appraisement * * * and the proceeds of the judicial sale are insufficient to satisfy the debt for the which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor.'" *Rushing*, at 600.

**{¶ 40}** As BONY and OCWEN assert, *Rushing* was superseded by statute. See *BHNO Partners, Ltd. v. Canterbury Joint Venture* (Sept. 13, 1996), E.D. La. No. 96-2498 ("Subsequent to the *Rushing* decision, the Louisiana Legislature amended the LDJA, which amendment specifically allowed mortgagees to recover insurance proceeds despite

foreclosure and sale without appraisal.").

{¶ 41} The court in *Sportsmen's Park*, *Inc.*, determined, "i[f] the mortgagee bids in for less than the mortgage debt, but fails to obtain a deficiency judgment for the balance, this * * * results in the full satisfaction of the debt and a forfeiture of any rights to share in the proceeds," in reliance upon section 1371 of the Real Property Actions and Proceedings Law, and *Moke Realty Corp. v. Whitestone Sav. & Loan Assn.* (1975)*, 82 Misc. 2d 396, 397-98, aff'd 51 A.D.2d 1005, aff'd 41 N.Y.2d 954.* As the *Moke Realty Corp.* Court noted, section 1371 of the Real Property Actions and Proceedings Law provides that in the absence of a motion for deficiency judgment, "the proceeds of the sale regardless of the amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist." Id.

{¶ 42} *Sportsmen's Park*, *Inc.* does not apply to resolve the competing claims to the insurance proceeds herein, and we agree with the trial court that whether "BONY pursued a deficiency action against Plaintiffs or not is irrelevant." Since BONY is entitled to the insurance proceeds to the extent of the mortgage debt, as the trial court correctly determined, the Barwicks' assigned errors are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

John M. Ebersole
Benjamin D. Carnahan
Thomnas A. Barni
Steven O. Dean
Hon. Dennis Adkins